**IN THE COURT OF APPEALS OF IOWA**

No. 15-1886
Filed February 10, 2016

**IN THE INTEREST OF L.S.,**
    **Minor Child,**

**W.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.

A father challenges the termination of his parental rights to his young son.

**AFFIRMED**.

Robert F. Bozwell Jr. of Bozwell Law Office, Centerville, for appellant.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant

Attorney General, for appellee.

Mary Krafka of Krafka Law Office, Ottumwa, attorney and guardian ad

litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A father, William, appeals the juvenile court's termination of his parental rights to his son, L.S., who is just shy of two years old. William asserts he would be ready to care for L.S. after his release from a residential halfway house where he was completing his prison sentence. He also contends termination was not in L.S.'s best interests. After reviewing the record anew, we conclude the evidence satisfied the elements of Iowa Code section 232.116(1)(h) (2013) and termination was in the child's best interests under section 232.116(2). Accordingly, we affirm the termination order.

William was incarcerated when L.S. was born in February 2014. Although paternity was not established until the summer of 2015, William was aware of his girlfriend's pregnancy and believed he was the child's father. William first had contact with L.S. when the child was three months old. At that time, William had "elected to run from the halfway house" where he was serving a sentence for burglary. William admitted burglarizing a business to obtain money to buy illegal drugs. William also acknowledged previous convictions for operating while intoxicated, public intoxication, and domestic abuse assault.

In June 2014, a social worker investigating allegations of methamphetamine use visited the home where L.S. was living with his mother and William. Authorities removed the four-month-old child from his parents' care at that time. William was arrested based on an active warrant relating to his departure from the halfway house. Because of concerns about L.S.'s parents' methamphetamine use, the juvenile court adjudicated L.S. as a child in need of

assistance (CINA) in July 2014. William remained incarcerated at the time of the CINA adjudication.

L.S. has been living with his maternal grandfather since his removal, and by all accounts they have a strong bond. The Iowa Department of Human Services (DHS) developed a case plan in November 2014 that recommended William participate in substance abuse treatment, refrain from illegal drug use, and submit to random drug testing. The case worker forwarded that report to William in prison, but William did not attempt any further contact with the department. William was not offered FSRP (Family Safety, Risk, and Permanency) services while in prison.

On March 17, 2015, the State filed a petition to terminate parental rights. The juvenile court held an initial hearing on the petition on May 5, 2015. Neither parent appeared at that hearing.[1] At that time, William's paternity had not been confirmed. The juvenile court reset permanency review for later in the summer of 2015. A second hearing occurred on August 7, 2015.[2] By the time of the August hearing, William—who was then twenty-five years old—was back at the halfway house, where he had weekly supervised visitation with L.S. While the FSRP worker believed William was "appropriate" with his son, L.S. had not developed an attachment to his father. William testified he was expected to be released from the halfway house in thirty to sixty days. He also testified he had a job lined

---

[1] During the course of the CINA case, the mother left Iowa for Louisiana and remained out of state at the time of the May 2015 hearing. The mother appeared at the August 2015 hearing and voluntarily consented to the termination of her parental rights.

[2] The juvenile court digitally recorded this hearing, but no court reporter transcription was provided on appeal. This court reviewed the recording for purposes of the appeal.

up as a machine operator. William acknowledged his incarceration had prevented him from developing a relationship with L.S. and asked for additional time to establish a bond with his son.

The juvenile court issued its order terminating the parental rights of both the mother and father on October 29, 2015. In terminating William's legal relationship with L.S., the court relied on sections 232.116(1)(e) and (h). The court decided termination was in L.S.'s best interests under section 232.116(2), emphasizing the child's integration into the home of his grandfather and the possibility of adoption by a relative, the grandfather. The court rejected William's request for additional time to achieve reunification under section 232.104(2)(b). The court acknowledged the DHS "could have moved more swiftly to provide William with services and visits while in prison," but ultimately reasoned William had "no one but himself to blame for his lack of a bond with his son."

William challenges the termination order in his petition on appeal. He contends "[t]here is not sufficient evidence in the record to establish the child could not be returned to the father's care and custody within a reasonable period of time following the termination hearing." He also claims "[t]ermination was not in the best interests of the child."

We review his challenges de novo. *See In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We find the State established the elements of paragraph (h) by clear and convincing evidence.

To terminate under this paragraph, the State was required to prove the child (1) was three years of age or younger; (2) had been adjudicated CINA pursuant to section 232.96; (3) had been removed from the physical custody of the parent for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) could not be returned to the parent's custody as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h) (2013). "At the present time" refers to the point of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

None of these elements was contested in juvenile court. William acknowledged at the August 2015 hearing that the halfway house was not an appropriate placement for L.S. and asked only for an extension of time to prepare for reunification. William does not renew his request for additional time in his petition on appeal. Accordingly, we find no basis to grant relief.

Although William labels his second claim as involving the child's best interests, in substance he challenges the State's reasonable efforts to return L.S. to his father's care. William admits the absence of a bond with his son, but complains no services were provided to him when he was in prison before paternity was established.

The DHS is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). We do not view the reasonable-efforts requirement as "a strict substantive

requirement of termination." Rather the State must demonstrate reasonable efforts "as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493.

The State satisfied that burden of proof here. The DHS provided William with visitation and other services as soon as he returned to the halfway house in the community. As the juvenile court found, William believed he was L.S.'s father but did not maintain contact with the DHS or request any services. The court concluded it was William's violation of his probation, re-arrest, and incarceration that accounted for the belated commencement of services. As the juvenile court aptly observed: "[W]hile the department certainly bears some responsibility for not acting promptly to provide William with services, William need look no further than the nearest mirror for the person responsible for his current situation." William is not entitled to relief on his second argument. From our de novo review of the record, we conclude it is in L.S.'s best interests to sever legal ties with William and to move toward possible adoption by his maternal grandfather.

We affirm the termination decision.

**AFFIRMED.**