611 N.W.2d 489 (2000)
In the Interest of C.B. and G.L., Minor Children, H.W., Mother, Appellant.
No. 98-1719.
Supreme Court of Iowa.
June 1, 2000.
*490 Martha M. McMinn, Sioux City, for appellant.
Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee-State.
Joseph Kertels, Sioux City, guardian ad litem for minor children.
Considered en banc.
CADY, Justice.
The State seeks further review of a decision by the court of appeals reversing an order by the juvenile court terminating a mother's parental rights. We vacate the decision of the court of appeals, and affirm the decision of the juvenile court.

I. Background Facts and Proceedings.
H.W. has six children. Each child has a different father. Two of the children are C.B., a boy, and G.L., a girl. C.B. was born on February 11, 1992, and G.L. was born on August 19, 1995. They were removed from H.W.'s care in August 1996, after H.W. assaulted an older child with a belt. She was intoxicated at the time and threatened to kill the child. H.W. has a long history of alcohol and drug abuse. G.L. tested positive for cocaine when she was born.
H.W. was convicted of child endangerment as a result of the incident which led to the removal of C.B. and G.L. She was placed on probation. Both C.B. and G.L. were adjudicated children in need of assistance pursuant to Iowa Code section 232.2(6)(a), (b), (j), and (n) (1995) in October 1996. G.L. was placed with her maternal grandmother in Louisiana. C.B. was placed with his maternal aunt in Sioux City.
The dispositional hearing was continued until March 1997 so an evaluation of H.W. and an Interstate Compact home study of the maternal grandmother in Louisiana could be completed. Visitation between H.W. and the children, C.B. and G.L., was permitted under the supervision of the Iowa Department of Human Services (DHS), or its designee, which included the children's maternal aunt. H.W., however, failed to cooperate and eventually left Iowa to avoid facing a probation revocation hearing. Consequently, she failed to maintain appointments, failed to complete a chemical dependency assessment, failed to submit to urinalysis drug screening, and failed to cooperate with the parent-skill development services. The court ordered H.W. to have no contact with C.B. or G.L. until she contacted the DHS. The home study recommended all of H.W.'s children be placed in the custody of the maternal grandmother in Louisiana.
H.W. was located by social service officials in Louisiana in September 1997. She was found in the home of the maternal *491 grandmother caring for some of the children, including G.L. She exhibited signs of intoxication at the time. Louisiana officials subsequently returned the children to Iowa for foster care placement, but not before H.W. attempted to abscond with G.L. She was stopped by law enforcement officials in a visibly intoxicated condition. She was also eight months pregnant.
H.W. returned to Iowa shortly before a review hearing in March 1998. She was unemployed, but claimed she had not used drugs for some time. In light of the probation revocation hearing she faced later in the month, the juvenile court found it was not in the best interests of C.B. and G.L. to permit visitation until after the conclusion of the probation hearing.
A permanency hearing was held in May 1998. By this time, H.W. had entered a relapse program. She was also attending Alcoholics and Narcotics Anonymous meetings, and had filed for divorce from her abusive husband. She was also employed. Nevertheless, an evaluator determined she was not a likely candidate for successful therapy with her children. She only attended one of her last five individual therapy sessions. H.W. completed a psychological evaluation which showed symptoms of a schizoid personality disorder and chemical dependency. The State filed a petition for termination of H.W.'s parental rights on the day of the permanency hearing. The court found it was not in the best interest of the children to resume visitation until the completion of the termination hearing.
The termination hearing was held in early July 1998. H.W. had maintained employment for over a month, been separated from her abusive husband for over three months, obtained separate living arrangements within the week preceding the hearing, and made progress in her chemical dependency treatment. Nevertheless, her chemical dependency counselor felt C.B. and G.L. should not be returned to H.W. unless under a highly structured setting.
The court found the circumstances which led to the adjudication of C.B. and G.L. as children in need of assistance continued to remain and that they could not be returned in a reasonable amount of time, stating
With [H.W.'s] history, the Court strongly believes that should the children be returned to her anytime in the near future, the stress of having to care for them would make it extremely likely that she would relapse. The events of the last couple months give reason to have hope for [H.W.'s] future, however, a couple months of sobriety weighed against 15 years of dependency makes that hope be cautious at best. These children deserve more than cautious hope, especially in light of the fact that they have been involved in the system for over two years already.
Furthermore, the court found H.W. failed to maintain significant and meaningful contact with C.B. for the fourteen months prior to the termination hearing, or with G.L. for the preceding eight months. Additionally, the court found H.W. never attempted to make reasonable efforts to resume caring for her children. The court terminated H.W.'s parental rights of C.B. and G.L. pursuant to Iowa Code section 232.116(1)(c), (d), (e), (g), and (k) (1997). H.W. appealed, and the case was transferred to the court of appeals.
H.W. claimed there was insufficient evidence to support termination of her parental rights under "all elements" of each ground for termination because the DHS did not use reasonable efforts to correct the problems which led to the removal of the children. H.W. specifically claimed the DHS failed to provide reasonable efforts, including visitation, during those three critical months preceding the termination hearing after she started to turn her life around.
The court of appeals found the record was insufficient to support termination of H.W.'s parental rights and remanded the *492 case to the district court for determination of whether further unification services could be implemented. The court of appeals found that the DHS did not use reasonable efforts to facilitate visitation and further found the recent lifestyle changes by H.W. made unification possible. The State filed application for further review.

II. Scope of Review.
We review termination proceedings de novo. In re S.N., 500 N.W.2d 32, 34 (Iowa 1993). Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses. Iowa R.App.P. 14(f)(7); In re M.M.S., 502 N.W.2d 4, 5 (Iowa 1993). The primary interest in termination proceedings is the best interests of the child. Iowa R.App.P. 14(f)(15); In re R.K.B., 572 N.W.2d 600, 601 (Iowa 1998). To support the termination of parental rights, the State must establish the grounds for termination under Iowa Code section 232.116 by clear and convincing evidence. See Iowa Code § 232.116. "Clear and convincing evidence" means there are no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence. See Raim v. Stancel, 339 N.W.2d 621, 624 (Iowa App.1983).

III. Waiver.
The State first claims H.W. waived any challenge to the sufficiency of the evidence by failing to set forth the specific elements of the grounds for termination which lacked sufficient evidence due to the lack of reasonable efforts. The State claims this is required by Iowa Rule of Appellate Procedure 14(a)(3). We disagree.
We have long recognized an appellant must identify alleged error on appeal. See Bennett v. MC No. 619, Inc., 586 N.W.2d 512, 521 (Iowa 1998); City of Des Moines v. Geller Glass & Upholstery, Inc., 319 N.W.2d 239, 244 n. 3 (Iowa 1982). This concept is reflected in Iowa Rule of Appellate Procedure 14(a)(3), which requires the appellant to separately list all issues for appeal. A broad, all encompassing argument is insufficient to identify error in cases of de novo review. Hyler v. Garner, 548 N.W.2d 864, 870 (Iowa 1996).
In this case, the juvenile court terminated parental rights under Iowa Code section 232.116(1)(c), (d), (e), (g), and (k). All five grounds for termination generally contain the dual elements of parental unfitness and the failure of the parent to become minimally fit to parent the child within a specific period of time in which our legislature has determined a child needs a permanent home. Although each is a separate ground for termination, they all contain a common element which implicates the reasonable effort requirement. In section 232.116(1)(c), the State must prove the parent was offered or received services to correct the circumstances which led to a CINA adjudication and that those circumstances still exist. In section 232.116(1)(d), the State must show the parent has not maintained significant and meaningful contact with the child, nor attempted to resume care of the children despite the opportunity to do so. In Iowa Code sections 232.116(1)(e), (g), and (k), the State must show the child cannot be returned to the custody of the parent.
H.W. challenged the sufficiency of evidence on appeal in terms of the reasonableness of the efforts of the DHS to achieve reunification of parent and child. She did not challenge the basis for the removal of the children. Thus, H.W. clearly implicated those elements of the grounds for termination dealing with the evidence to show the child cannot be returned home because the parent has not improved enough to justify reunification. Consequently, we find H.W. has adequately raised the issue on appeal without targeting the reasonable efforts argument to each specific subsection.

*493 IV. Reasonable Efforts.
Our laws relating to the welfare of children have been driven for the last twenty-five years by policies and laws generally developed at the national level. Under the Adoption Assistance and Child Welfare Act of 1980, Public Law 96-272, 94 Statutes 500 (codified as amended in scattered sections of 42 U.S.C.), the concept of family preservation was established with a goal of reuniting children with their families after reasonable efforts by social services. See In re Lilley, 719 A.2d 327, 332 (Pa.Super.Ct.1998). Congress mandated services for families and children under the threat of ineligibility for federal matching funds to accomplish this goal. See id. The reasonableness effort was conceived by Congress in part to ensure that prior to the expenditure of federal funds on foster care, reasonable efforts would be made to prevent out-of-home placement, and reasonable efforts would be made for unification following out-of-home placement. See Debra Ratterman et al., Reasonable Efforts to Prevent Foster Placement 1 (2d ed.1987). The requirement of reasonable efforts exists both to protect rights of parents and children, and provide financial incentive for states. Id. at 1-2; see also 42 U.S.C. § 671(a)(15), (16).
Iowa responded with its own scheme of reasonable efforts by requiring the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); see also In re M.B., 553 N.W.2d 343, 345 (Iowa App.1996); In re A.Y.H., 508 N.W.2d 92, 95 (Iowa App.1993). The concept covers both the efforts to prevent and eliminate the need for removal. Iowa Code § 232.102(10)(a). The focus is on services to improve parenting. In re T.A.L., 505 N.W.2d 480, 485 (Iowa 1993). However, it also includes visitation designed to facilitate reunification while providing adequate protection for the child. M.B., 553 N.W.2d at 345.
Recently, the reasonable efforts requirement has undergone some transformation. This is because the family preservation concept which guided our general national policy for the last two decades was found to be detrimental to children in some cases. See Lilley, 719 A.2d at 332. Consequently, the Adoption and Safe Families Act of 1997, Public Law 105-89, 111 Statutes 2115 (codified as amended in scattered sections of 42 U.S.C.), now broadens the focus of reunification to place greater emphasis on the health and safety of the child, and mandates a permanent home for a child as early as possible. See 42 U.S.C. § 675(5)(C); Lilley, 719 A.2d at 333. It also eliminates the reasonable effort requirement for certain types of parental behavior. See 42 U.S.C. § 675(5)(C). In response, our legislature recently enacted amendments to our comprehensive juvenile justice act to permit waiver of reasonable efforts when aggravating circumstances exist. See 1998 Iowa Acts ch. 1190, § 17 (codified at Iowa Code § 232.102(12) (1999)). These amendments not only reflect the critical role of reasonable efforts from the very beginning of intervention, but recognize a child's right to appropriate custodial care and the important element of time.
At the same time, the reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts. See In re B.K.K., 500 N.W.2d 54, 57 (Iowa 1993); In re L.H., 480 N.W.2d 43, 46 (Iowa 1992). The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.
In this case, H.W. objected to the lack of visitation after she returned to Iowa, but did not object to other reunification efforts by the DHS until the termination proceeding. We have repeatedly emphasized the importance for a parent to object to services *494 early in the process so appropriate changes can be made. See B.K.K., 500 N.W.2d at 57; see also In re J.L.W., 570 N.W.2d 778, 781 (Iowa App.1997). Thus, in considering the sufficiency of evidence to support termination, our focus is on the services provided by the state and the response by H.W., not on services H.W. now claims the DHS failed to provide.[1]

V. Sufficiency of Evidence.
The children were removed from the care of H.W. in August 1996. A case plan was entered and services were outlined to achieve the goal of reunification. However, H.W. was not responsive to services until April 1998. Her life was plagued with a variety of problems, including troubled dependent relationships, and a debilitating drug addiction. Consequently, her interest in her children waned. At the dispositional hearing in March 1998, H.W. had not seen G.L. since October 1997, and had not seen C.B. since May 1997. She had left Iowa for nearly a year without any services.
After eighteen months of almost complete lack of cooperation with the DHS, H.W. began to show positive signs in her lifestyle. In April 1998, shortly before the permanency hearing in May, she entered a drug relapse program. She expressed interest in establishing visitation with her children and obtained employment. She also secured her own apartment about a week prior to the termination hearing in July 1998.
While H.W. took positive steps to turn her life around in the months prior to the termination hearing, these steps do not eliminate her past, including her absence from the lives of the children and her failure to utilize services. The problems encountered by H.W. which led to the removal of the children are significant. Even though she entered a relapse program a couple months prior to the termination hearing, she only attended one of five individual therapy sessions prior to the termination hearing. The employment she secured in the months prior to the termination hearing was short term.
While we recognize the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," Iowa has built this patience into the statutory scheme of Iowa Code chapter 232. See In re D.A., Jr., 506 N.W.2d 478, 479 (Iowa App.1993) (quoting In re A.C., 415 N.W.2d 609, 613-14 (Iowa 1987)). As we noted in A.C., "[t]he crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." A.C., 415 N.W.2d at 613; see also In re D.W., 385 N.W.2d 570, 578 (Iowa 1986) ("we cannot gamble with the children's future[, t]hey must not be made to await their mother's maturity"). Thus, the legislature incorporated a twelve-month limitation for children in need of assistance aged four and up, and a six-month limitation for children in need of assistance aged three and below. See Iowa Code § 232.116(1)(e), (g). If a parent ceases to have contact with his or her child for these limitation periods, and the other requirements are met, "the legislature... has made a categorical determination that the needs of a child are promoted by termination of parental rights" in cases meeting the conditions of section 232.116(1)(e). In re M.W., 458 N.W.2d 847, 850 (Iowa 1990). The purpose of these limitations "is to prevent children from being perpetually kept in foster care and to see that some type of permanent situation is provided for the children." In re J.P., 499 N.W.2d 334, 339 (Iowa App. 1993) (discussing the limitation found in section 232.116(1)(e)).
*495 Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency. In re L.L., 459 N.W.2d 489, 495 (Iowa 1990). Insight for the determination of the child's long-range best interests can be gleaned from "evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." In re Dameron, 306 N.W.2d 743, 745 (Iowa 1981).
In this case, H.W.'s efforts are simply too late. The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient. H.W. has severe problems which have rendered her unfit to care for her children for nearly two years. There was testimony that it would be another year from the termination hearing before the children could be returned to her. H.W. would need to remain drug-free during this time, and continue to earnestly participate in services. Considering all of the circumstances and the long history of this case, there is no reasonable basis to conclude this could even be done. H.W. needed to begin her efforts to pull her life together and resume care for her children much earlier.
This case emphasizes the critical need for services to be implemented by the DHS early in the intervention process and for the parents to actively and promptly respond to those services, as well as to voice any problems with services so changes or corrections in the case plan can be made.[2] Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting. See In re C.K., 558 N.W.2d 170, 175 (Iowa 1997) (after statutory time, the patience with parents must yield to needs of the child). In this case, the DHS performed its role of providing services. The problem, however, was not with the services but was with H.W.'s response to those services. She waited too long to respond, and the underlying problems which adversely affected her ability to effectively parent were too serious to be overcome in the short period of time prior to the termination hearing. Moreover, the failure of the DHS to provide visitation in the last months before the termination hearing did not impact the outcome of the case. At the time of the termination hearing, there was clear and convincing evidence the children could not be returned to the care of H.W. We find substantial evidence to support all grounds for termination.

VI. Conclusion.
We vacate the court of appeals decision and affirm the decision by the juvenile court to terminate the parental rights of H.W.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.
NOTES
[1] Iowa Code section 232.99(2A), as amended by 1998 Iowa Acts chapter 1190, section 10, now provides that at the beginning of each dispositional and subsequent hearing the juvenile court shall "advise the parties" that the failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination proceeding.
[2] Iowa Code section 232.102(7A), as amended by 1998 Iowa Acts chapter 1190, section 14, now provides that an order transferring custody to the DHS or another agency shall include a statement informing the parents that the consequences of removal may include termination of parental rights.