# IN THE COURT OF APPEALS OF IOWA

No. 16-0179
Filed April 27, 2016

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**J.D., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A father appeals from the order terminating his parental rights. **AFFIRMED.**

Charles E. Isaacson of Charles Isaacson Law P.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

John P. Jellineck, Des Moines, for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

A father appeals the termination of his parental rights.[1]  We find the child could not be returned to the father's custody at the time of the termination hearing and termination is in the child's best interests.  Although the father has the capabilities to be a good parent, over the course of three years he has not sufficiently followed directives and orders, nor stepped up to the plate to successfully complete therapy and counseling.  His method to overcome a drug addiction was to turn to alcohol.  His recent limited measure of success is simply too little too late.  We therefore affirm.

The child was born in May 2012 and came to the attention of the department of human services (DHS) in August 2012 when the mother attempted suicide while the child was in her care.  At that time the parents had each been arrested for domestic abuse assault against the other.  Both had substance abuse issues.

Voluntary services were provided to the parents and, on July 16, 2013, the child was adjudicated a child in need of assistance (CINA) when the parents stipulated there were ongoing issues of domestic violence, alcohol and substance abuse, and mental health issues.  The family continued to receive services to address substance abuse and domestic violence.

On May 9, 2014, the juvenile court held a permanency hearing and granted the parents a six-month extension to seek reunification with the child. With respect to the father, the court ruled:

---

[1] The mother's rights were also terminated.  Her appeal was dismissed by supreme court order dated February 15, 2016.

The child will be able to return home within six (6) months if the following specific factors, conditions and/or expected behavioral changes are made, eliminating the need for the child's removal from the home:

[Father]: obtain a mental health evaluation and follow any and all treatment recommendations; maintain frequent and active participation in individual therapy, demonstrat[e] insight as to relationship and domestic violence issues, and how they affect safe parenting of [L.D.]; maintain frequent and active participation in couples therapy with [the mother] so long as [the father] and [the mother] intend to remain a couple and parent [L.D.] together in the same home; demonstrate a clean and sober lifestyle by maintaining frequent and active participation in substance abuse treatment pursuant to recommendations of a treatment program, abstaining from use of narcotics, opiates and alcohol, complying with DHS requests for drug screens, and notifying DHS of all prescriptions, signing any necessary releases to allow DHS to determine whether prescribing providers know of his addiction and methadone use; demonstrate safe and appropriate housing for the child.

On August 12, 2014, a permanency review hearing was held. The father did obtain a mental health evaluation in June 2014, which recommended that he participate in ongoing treatment. As of August, he had attended only two appointments. The father remained on a methadone regimen "with no current plan to decrease [the] dosage." The mother and father had been to couples counseling, but were advised they should work in individual therapy before they would be ready to engage again in therapy as a couple. The court continued the child's out-of-home placement.

On February 13, 2015, the court modified the permanency order placing the child in the mother's custody, with visitation by the father at DHS's discretion. The child was removed from the mother in June, however, because it was learned that, contrary to the mother's assertions, the parents continued to be in a relationship that was volatile, the mother was allowing the father unsupervised

visits with the child, and the father, while on his methadone regimen, was continuing to use illegal substances ("opiates and benzos").

In the July 1, 2015 modification of disposition order, the court noted the father "is not engaging in meaningful therapy and has not been exercising consistent, professionally supervised visits" with the child. Further, the court observed:

> 4. . . . The history detailed above shows very clearly that when [the mother and the father] are together, dysfunction, chaos and instability ensues. We are at that point again. After almost 3 years of services, these parents are still not able to be together and protect [the child] from the risk of harm stemming from ongoing drug abuse and mental health issues. Removal on June 4, 2015, was and remains necessary.
> 5. The child shall remain in out of home placement. Placement outside the parents' homes is necessary because a return to the home would be contrary to the child's welfare in that the father has unresolved substance abuse issues and is not engaging in services; the parents have unresolved domestic violence issues; and the mother is not protecting the child through her and the child's renewed interactions with the father without seeking DHS input or approval or following reasonable DHS directives regarding supervision of father's contact with child.

The court found reasonable efforts had been made to eliminate the need for removal and supplemented the case plan. The court ordered the parents were to comply with Family Safety, Risk, and Permanency services, provide drug screens at DHS discretion, participate in individual therapy and couples counseling when recommended by their therapists, and the father was to comply with substance abuse treatment and methadone program.

A dispositional review hearing was held on October 23, 2015. The DHS report to the court submitted at that hearing noted the father had tested positive for opiates on February 16, 2015; for benzodiazepines on May 22, 2015; and for

amphetamines on June 25, 2015. Though reportedly on methadone, he had tested negative for methadone on February 4 and June 22, 2015.[2] The father had resumed attending group substance abuse meetings in September 2015. After the hearing, the court continued current orders, found reasonable reunification efforts had been made, and scheduled a permanency hearing for December 18, 2015.

On November 16, the State filed a petition to terminate parental rights.

On December 11, the father filed a motion for hearing on reasonable efforts, asserting DHS was withholding visitation despite that he had submitted clean drug screens since the last hearing.

A permanency and termination hearing was held on December 18. The DHS report to the court for that hearing noted that the father continued to be on a dosage of methadone. He had not been attending regularly scheduled appointments with his outpatient counselor, and his counselor reported he had attempted to contact the father on at least five occasions about the appointment scheduled for December 11, 2015. The report also indicated the father was not following through with individual therapy, the mother and father were inconsistent in therapy, and had not adequately dealt with domestic violence concerns. The report also noted the parents continued to use alcohol together. Stress, fighting with the child's mother, and alcohol use were all identified by the father as "triggers" to potential relapse.

---

[2] At the termination hearing, the father admitted he had relapsed on opiates, "benzos," and had used Adderall, and that he had submitted at least one "fake" urine sample during this time.

The father testified he and the mother were living together at that time. He stated he had been attending therapy—couples therapy and individual—for the last several weeks. The father testified he had not used illegal substances since June 2015. He acknowledged he continued to consume alcoholic beverages despite being told by his substance abuse counselor he should not and the court's order that he not do so. He acknowledged he had not attended substance abuse treatment regularly since June 2015. The father is employed but has paid no financial support for L.D.

The father appeals from the subsequent order terminating his parental rights to his three-year-old child, pursuant to Iowa Code section 232.116(1)(d) and (h) (2015). The juvenile court's January 15, 2016 ruling is thoughtful, thorough, and well-reasoned. Upon our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we fully agree with the juvenile court's findings and conclusions that termination is appropriate pursuant to section 232.116(1)(h) (child three or under adjudicated CINA who has been out of parent's custody for at least six of the last twelve months and cannot be returned at present), and in the child's best interests. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the [statutory] limitation period lapses, termination proceedings must be viewed with a sense of urgency. Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Because we affirm on that basis, we need not address whether termination is also appropriate under subsection "d." *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Repetition of

the findings and conclusions by the juvenile court, with which we concur, would serve no useful purpose.

**AFFIRMED.**