# IN THE COURT OF APPEALS OF IOWA

No. 16-0601
Filed June 29, 2016

**IN THE INTEREST OF J.L.,**
**Minor Child,**

**A.L., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Danielle M. DeBower of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant mother

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Cynthia S. Schuknecht of Noah, Smith & Schuknecht, P.L.C., Charles City, for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her child, arguing the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunify the family as required by Iowa Code section 232.102 (2015). Specifically, the mother, who is deaf, complains the DHS failed to provide her with an adequate interpreter. Upon our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we find reasonable efforts were made to reunify the family, and, even if the mother had received the services she requested, the child could not be safely returned to her care. Accordingly, we affirm the termination of her parental rights.

**I. Background Facts and Proceedings.**

The child at issue was born in June 2014. One month later, the State filed a petition seeking to have the child adjudicated a child in need of assistance (CINA) due to the mother's self-reported suicidal ideation and her apparent lack of basic parenting skills. Because the mother was not providing the child proper nutrition, the child was removed from her care and placed in family foster care in August 2014.

A hearing on the CINA petition began in October 2014. The court noted that at the hearing, the mother seemed able to accurately understand what the interpreter was signing but that the interpreter sometimes had difficulty understanding the mother due to the variations of signing the mother utilized. One of the family safety, risk, and permanency (FSRP) service providers testified that she communicated with the mother in writing and believed the mother

understood her. Interpreter services began around the time of the adjudicatory hearing.

On October 27, 2014, the mother consented to the CINA adjudication. The court adjudicated the child to be a CINA pursuant to section 232.2(6)(c)(2) and continued the child's placement in family foster care. The court also noted it was "unclear" how well she understood the FSRP providers' direction due to the mother's use of "a non-standard form of sign language" and her reliance on written communication, though that "visitation ha[d] been occurring with an interpreter present." Finally, the court found it would be "prudent" for the mother to learn American Sign Language (ASL) in order to teach it to the child so that both she and the child could communicate effectively with others.

The State filed a petition to terminate the mother's parental rights in February 2015. Following a hearing, the court terminated the mother's parental rights pursuant to section 232.116(1)(b), (e), and (h). This court then reversed the termination of her parental rights after finding the DHS's failure to furnish a sign language interpreter for the mother during interactions with the DHS and providers did not satisfy its statutory obligation to make reasonable efforts toward reunification. *See In re J.L.*, 868 N.W.2d 462, 466-68 (Iowa Ct. App. 2015). Thereafter, the DHS reinitiated FSRP services for the family. The CINA adjudication was continued following a September 2015 permanency hearing.

In November 2015, the mother filed a request for appointment of a certified deaf interpreter (CDI). The juvenile court found the mother did not qualify for appointment of a CDI under Iowa Rule of Court 47.1. In the November 17, 2015 permanency review order, which continued the CINA adjudication, the

court also considered whether the DHS had met its obligation to provide reasonable efforts. With regard to the mother's request for CDI services, the court found there was no evidence the mother would benefit from those services because a number of unrelated factors had led to her "present difficulty," noting the mother "simply does not apply the parenting skill education she has been taught; she continues to make unsafe decisions about her interpersonal relationships at great risk to herself and [the child]; and she is not able to support herself independently."

On December 3, 2015, the State filed a petition seeking to terminate the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) and (k). The termination hearing was held in March 2016. In an order entered on March 23, 2016, the court terminated the mother's parental rights under both paragraphs alleged in the petition. It is from this order that the mother appeals.

**II. Reasonable Efforts.**

The mother raises one issue in this appeal. She does not dispute the State proved the grounds for termination or that termination is in the child's best interests. Instead, she argues the DHS failed to make reasonable efforts toward reunification as required by Iowa Code section 232.102(7), which obligates the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *See also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

With regard to the reasonable-efforts requirement, the juvenile court found the DHS provided numerous services to the mother, as follows:

> HUD, food assistance, FIP, WIC, SSI, Title 19, county case management services, payee services, Supported Community Living services, advocate services, host family services, SAFETY services, FSRP services, substance abuse evaluation and treatment, mental health evaluation, individual counseling, medication management, interpreter services for supervised visits and other services, psychiatric hospitalizations, Crisis Intervention services, psychological evaluation and IQ testing, referral to food bank services, funding for adaptive equipment, BHIS referral, parent skill development instruction, family team meetings, family support conferences, staffings, CINA assessment, two 2-week sessions of safety services, Advocacy for Deaf Iowans Against Abuse, Families Together services, Public Health nursing services, foster care placements, assistance with purchase of adaptive equipment, . . . a family support conference, and on-going DHS case management.

The court concluded: "These are reasonable efforts toward reunification."

The mother claims that the ASL interpreter provided by the DHS was not sufficient for her to communicate and understand what was being asked of her and that the termination of her parental rights was "largely" the result of her inability to understand instructions that were given to her. In the mother's view, the DHS should have provided her with a CDI for all FSRP services.[1] The mother also complains the court required her to learn ASL without giving her any assistance. She argues these failures are "fatal to the [S]tate being able to prove reasonable efforts were made as required."

The juvenile court determined a CDI was not necessary for a number of reasons, noting an ASL interpreter had been adequate during FSRP services because the mother had been able to ask for information until she understood what was required of her. The court found the mother appeared to understand

---

[1] The juvenile court noted that "[t]here is not a single CDI in the State of Iowa or Minnesota," and it would therefore "be impossible to appoint someone to attend all of the mother's services."

the concepts relayed to her and simply failed to implement them in subsequent visits. Additionally, the mother testified that she learned a great deal of parenting skills from the foster mother, yet an interpreter was never present during their time together. The mother also testified that she understood all of the information expressed during her therapy sessions, and the same interpreter used during FSRP services was utilized in those therapy sessions. The record also clearly shows the mother sufficiently understands written communication. Finally, the mother failed to indicate how a CDI would help her understand instruction better. The court then concluded the request for a CDI had little to do with the mother's need to effectively communicate but rather her need to excuse her failure to demonstrate the appropriate parenting skills:

> Unfortunately, it is clear to this court that the mother is falsely claiming an inability to communicate effectively without the aid of a [CDI]. When she wants to get her point across to someone or is open to receiving information from someone, she does. When her claims of not understanding help her blame the [DHS] and FSRP provider for lack of progress, she does that instead. Her false claims have been a distraction through the CINA case, and the mother continues to try to justify that to explain her lack of progress.

Under the record before us, the mother has failed to show she required a service that was not provided to her.

Additionally, the reasonable-efforts requirement is not a strict substantive requirement for termination. *See C.B.*, 611 N.W.2d at 493. Instead, the services provided by the DHS to reunify parent and child after removal impacts the State's burden of proving the child cannot be safely returned to the care of a parent. *See id.* Here, the record is replete with evidence the child could not be safely returned to the mother's care regardless of the services offered to her. The

termination order provides great detail into the mother's shortcomings and inability to make progress in spite of the volume of services offered or provided to her. As the court noted:

> It does seem . . . that the mother, to a large extent, uses her disability to portray herself as helpless. Most hearing-impaired people hold jobs, drive vehicles, maintain households, and care properly for their children. The mother does not seem interested in any of those pursuits. She has no independent ability to support herself financially, squanders her limited financial resources, and makes choices that impact her eligibility for financial assistance (i.e. losing WIC because she was mad . . . so she didn't attend the appointment, being evicted and losing housing assistance for three years for repeatedly allowing people to stay at her home). She surrounds herself with violent substance abusers and inserts herself into dangerous situations with strangers and acquaintances. She allowed her sister to physically abuse [the child]. She has been involved with numerous men throughout the CINA proceeding (at least nine different men, many of whom overlap in their time with the mother, and often reoccur at later times—four in the month of October 2015 alone), none of whom are appropriate to be around a child. She will not on her own seek necessary items for her to care for [the child] (i.e. monitor, smoke detector, or crib), and once someone else procures them for her after a six month or more delay, [she] will not (in the case of the monitor) or cannot (in the case of the crib) use them to actually assist her. She easily becomes worked up to the point of distraction and has demonstrated on numerous occasions that her unstable mental health condition causes her to require psychiatric hospitalization. A child cannot be subjected to such behavior.
>
> Most importantly, the mother continues to be unable to figure out what her child needs. She still will not feed him on a schedule or look for hunger cues before trying to feed him. She has fed him inappropriate foods off and on since he was three weeks old, and on one occasion, [she fed him] expired food. She constantly wants to feed him, not because he is hungry, but because despite the provision of twenty-one months of services, she doesn't know anything else to try.

The record amply supports these findings.

We agree the mother has failed to make the changes required to enable her to provide the child appropriate care and to ensure the child's safety. The

receipt of CDI services or additional assistance in learning ASL would not change the outcome of this case. Accordingly, we affirm the order terminating the mother's parental rights to her child.

**AFFIRMED.**