# IN THE COURT OF APPEALS OF IOWA

No. 20-0582
Filed June 17, 2020

**IN THE INTEREST OF Z.P.,**
**Minor Child,**

**F.M., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

        The father appeals the termination of his parental rights. **AFFIRMED.**

        Jesse A. Macro, Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney General, for appellee State.

        Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

        Considered by Doyle, P.J., Schumacher, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The father appeals the termination of his parental rights to his child, Z.P., born in late 2016. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2019). The father challenges the statutory ground for termination and argues the loss of his rights is not in Z.P.'s best interests. "We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

The juvenile court may terminate parental rights pursuant to section 232.116(1)(h) when the court finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father contests the third and fourth elements—whether Z.P. was ever "formally removed" from his care and whether the State proved he was unable to take over caring for her at the time of the termination hearing.

As to his challenge to the third element, the father did not contest the issue of removal at the termination proceedings. He focused his arguments on whether the State proved the child could not be placed in his care. He cannot raise the issue for the first time on appeal. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."). If we were to consider

the merit of the father's claim, we would find the child was removed from his care as required by the statute. It seems he questions the removal because Z.P. was in the full-time care of her mother at the time of the child's removal; the father had been visiting the child weekly at the mother's house, but that was the extent of his parenting. But "[p]hysical removal from the mother is sufficient to start the statutory timelines counting toward termination as to either parent." *In re J.E.*, 907 N.W.2d 544, 547 (Iowa Ct. App. 2017). And the court's orders following the CINA removal hearing, the CINA adjudication hearing, and the dispositional hearing confirm Z.P.'s placement outside of the care of both the mother and father and provide a reason why she cannot be placed safely in either parent's care.

The father also challenges the fourth element, maintaining Z.P. could have been placed in his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). We disagree. The barriers preventing the father from taking over care of Z.P. are unique in comparison to other termination-of-parental-rights cases we see, but that does not make them any less real. The father works approximately eighteen hours per day, Monday through Friday. While he testified he would quit his evening job if Z.P. was placed in his care, he was still actively working both jobs at the time of the termination hearing in late January 2020. Based on previous statements made by the father, it is not clear he could financially afford to quit working the second job. As of the termination hearing, the father did not have a plan in place for who would care for Z.P. while he was working. He stated he was aware of a place that took children before 6:00 a.m.—the time he would need to drop Z.P. off—but he had not checked the place out or filled out an application for Z.P. to attend. We question if the father would schedule and get

Z.P. to her therapy and other necessary appointments—because of his long work hours, his apparent lack of interest in and knowledge about Z.P.'s medical and mental-health issues, and his lack of a driver's license. Additionally, the father's home was not ready for Z.P to live in, as he did not have a bed in which it was safe for her to sleep.

The father progressed to semi-supervised visits and seemed generally able to keep Z.P. safe during the few hours a week he spent with her. But we agree with the juvenile court that he "simply failed to make a meaningful effort to assume his parental role." The father testified that he would follow all court orders and take any further steps required of him if the court placed Z.P. in his care, but he had failed to do so up to that point. Because he never learned about Z.P.'s medical and mental-health diagnoses, did not ready his home for Z.P. to move in, and did not know who would provide care for her during his long work days, Z.P. could not be placed in his care at the time of the termination hearing.

The father contends termination of his parental rights is not in Z.P.'s best interests. In our best-interests analysis, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). Additionally, as it applies to Z.P., we consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family." *Id.* § 232.116(2)(b). While the father loves Z.P., he is not able to provide her full-time care. This is true in spite of the fact that DHS had been involved with the family

for more than sixteen months and the father received an extension of time to work toward reunification in September 2019.  *See C.B.*, 611 N.W.2d at 495 ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency.").  In contrast, the foster parent, who cares for Z.P. and one of her siblings, is able to meet Z.P.'s physical and emotional needs and plans to adopt Z.P. and her sibling.  The family's service provider opined that Z.P. is happy and well-integrated into her foster family and their home.  For these reasons, termination of the father's parental rights is in Z.P.'s best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED.**