**IN THE COURT OF APPEALS OF IOWA**

No. 20-1546
Filed April 28, 2021

**IN THE INTEREST OF J.L., J.L., J.L., and J.L.,**
**Minor Children,**

**S.L., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

District Associate Judge.


        A mother appeals the termination of her parental rights to her four children.

**AFFIRMED.**



        Christopher A. Clausen of Clausen Law Office, Ames, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Mark J. Olberding, Nevada, attorney and guardian ad litem for minor

children.



        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to her four children, born in 2012, 2014, 2015, and 2018.[1]  She does not challenge the grounds for termination cited by the district court.  Instead, she argues termination was not in the children's best interests, the district court should have declined to terminate her parental rights based on the parent-child bonds, and the court should have held "separate permanency hearings and termination of parental rights hearings." We will address these arguments together.

The mother used illegal drugs for almost two decades.  The department of human services intervened after learning the parents "had methamphetamine paraphernalia in their home that was accessible to" the children.  The children were removed and placed in foster care.  The mother tested positive for methamphetamine through most of the child-in-need-of-assistance proceedings. The district court concluded the children could not be returned to her custody pursuant to Iowa Code section 232.116(1)(f) and (h) (2020).  *See In re W.M.*, ___ N.W.2d ___, ___, 2021 WL 1228087, at *5 (Iowa 2021) (concluding the State proved termination under section 232.116(1)(f) where the mother "engaged in a cycle of abusing drugs, getting clean, relapsing, seeking treatment, and again abusing drugs").

The district court also concluded termination of the mother's parental rights was in the children's best interests.  *See* Iowa Code § 232.116(2).  The court

---

[1] The father's parental rights were also terminated.  His appeal was dismissed by the supreme court for failure to comply with appellate rules.

simultaneously declined to invoke an exception to termination based on the bond

the mother shared with the children. *See id.* § 232.116(3)(c). The court provided

the following reasoning for these prongs of the termination analysis:

> Mother has a job and a home for the children. They have a visible bond during visits. Unfortunately, she admits she is a drug addict and has been for over half her life. During the last year and a half she has been relapsing into meth use roughly every three months. She has been arguably clean for the last five months. However, the court believes the children's safety remains at risk because mother has espoused in court that she has and could again successfully parent while under the influence of meth. In order to further the long-term nurturing and growth of the children, the best placement is with an adoptive family. The physical, mental, and emotional condition and needs of the children can be best met by termination for the above reasons.

In a post-trial ruling, the court enlarged its findings but declined to alter its

conclusions.[2] The record supports the district court's detailed findings.

A service provider who supervised visits testified to the close relationship

between the mother and her children:

> The children appear excited when they get picked up for visits. They seek [the mother] out for attention. They seek her out for their needs. When they are upset with something, they will go to her. When they want a hug, they go to her. So as far as I can tell the children love their mother.

Despite her love for the children, the mother repeatedly compromised their safety.

*See W.M.*, ___ N.W.2d at ___, 2021 WL 1228087, at *7 (concluding the mother

---

[2] The mother now reprises arguments made in her post-trial motion, namely that certain drug tests were inaccurate and the district court "refused to consider the impact of the termination on [her] unborn child." The district court thoroughly addressed these arguments. The court explained that two contested drug tests were not considered in the termination analysis and the potential bond between the mother's yet-to-be-born child and the siblings was not an appropriate consideration in the best interests analysis. We agree with the court's post-trial analysis and find no reason to revisit those issues.

"failed to provide the clear and convincing evidence necessary to show that, on balance, that bond makes termination more detrimental than not"). The department's social worker case manager testified that in the five years she had known the mother, the mother probably relapsed about eighteen times and the longest period of sobriety was "about eight months" in 2015 or 2016. She stated the mother was "under the influence" during visits and did not "believe that using affect[ed] her parenting ability." She opined there was not "enough of a time frame for sobriety at this juncture in the case to return" the children to her.

The mother admitted her "problem with methamphetamine" began when she "was 14" and her use continued despite her participation "in several treatments." She also admitted using the drug while the children were in her care. And she admitted using methamphetamine just three months before the combined permanency and termination hearing. Four child-endangerment charges were pending against her at the time of the termination hearing.

On our de novo review, we conclude the district court appropriately found termination of the mother's parental rights to be in the children's best interests and appropriately declined to invoke an exception to termination based on the parent-child bond. As for the court's decision to combine the termination hearing with the permanency hearing, the court of appeals has concluded that "our statutory scheme does not bar holding a concurrent permanency and termination hearing." In re H.V., No. 15-1481, 2015 WL 6507559, at *1 (Iowa Ct. App. Oct. 28, 2015) (citing In re D.S., No. 15-0071, 2015 WL 4936334, at *1 (Iowa Ct. App. Aug. 19, 2015)). We are persuaded by this authority.

We affirm the district court's termination of the mother's parental rights to the four children that are a subject of this appeal.

**AFFIRMED.**

Schumacher, J., concurs; Tabor, J., concurs specially.

**TABOR, Judge** (specially concurring).

Like the majority, I would affirm the order terminating the mother's parental rights. But I write separately to emphasize the juvenile court's dual responsibilities when holding the permanency hearing in the child-in-need-of-assistance (CINA) case concurrently with the hearing on the petition to terminate parental rights. It is important to remember the distinct purpose of each proceeding. For children in foster care, like these four siblings, the court must hold a permanency hearing within twelve months of their removal.[3] *See* Iowa Code § 232.104(1)(a)(1) (2020). During that hearing, the court must consider the children's "need for a secure and permanent placement in light of any permanency plan or evidence submitted to the court and the reasonable efforts made concerning the child[ren]." *Id.* § 232.104(1)(c). After the permanency hearing, the court has several options: (1) return the children home; (2) continue placement for an additional six months; (3) direct the county attorney or children's attorney to institute termination proceedings; or (4) enter an order transferring custody or otherwise establishing permanency. *Id.* § 232.104(2).

Sometimes the State will petition to terminate parental rights before receiving direction from the court. *See In re D.D.R.C.*, No. 00-1912, 2001 WL 913787, at *2 (Iowa Ct. App. Aug. 15, 2001) (explaining that "section 232.111, concerning a petition for termination of parental rights, does not place any time

---

[3] This mandate stems from the Adoption and Safe Families Act (ASFA), 42 U.S.C. § 675(5)(C), which ties federal funding to the goal of achieving family reunification or permanent placement for a child as early as possible. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

frame on when a petition may be filed").[4]  When that happens, the juvenile court may hold a concurrent permanency and termination hearing with proper notice to the parties.  *See* Iowa Code § 232.104(1)(b), (c).  But even when combined, each action requires the juvenile court to make particular written findings.  *Compare id.* § 232.104(1)(c) (permanency), *with* § 232.117(1) (termination).

Here, the juvenile court scheduled a permanency hearing for June 19, 2020—telephonically because of the COVID-19 pandemic.  But the mother objected to the telephonic hearing.  She offered several reasons, including a complaint "that the assigned Assistant Marshall County Attorney has spoken over her during prior hearings" conducted by telephone.  The court found merit in the mother's objection and agreed to hold the hearing in person.  The court then continued the permanency hearing until late August.  Meanwhile, the State filed its petition to terminate parental rights on June 22.  Although the mother requested a separate permanency hearing, the court held a joint permanency and termination hearing on August 27.

The court did not make separate findings on permanency under section 232.104(1)(c).  Doing so would have been best practice.  But that omission is not the essence of the mother's challenge.  Rather, in her petition on appeal, the mother claims a separate permanency hearing would have provided her with "specific guidance from the court as to its expectations" before it entertained an

---

[4] Section 232.111(2)(a)(1) embodies the ASFA requirement that, with certain exceptions, the county attorney must file a petition to terminate parental rights by the end of the child's fifteenth month in foster care if "[t]he child has been placed in foster care for fifteen months of the most recent twenty-two-month period."

order to terminate her parental rights.  That may be true.  But the overall record shows that the court conveyed its expectations for the mother at each hearing in the CINA case.  Like the majority, I do not find the combined hearing deprived her of a meaningful right.