**IN THE COURT OF APPEALS OF IOWA**

No. 21-1379
Filed February 16, 2022

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**J.B.M., Father,**
     Appellant
_____

Appeal from the Iowa District Court for Guthrie County, Virginia Cobb, District Associate Judge.

A father appeals a district court order terminating his parental rights. **AFFIRMED.**

Nicholas Einwalter, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant County Attorney, for appellee State.

Christine Sand of Wild, Baxter & Sand, PC, Guthrie Center, attorney for minor child.

Considered by May, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A father appeals a district court order terminating his parental rights. We find there is clear and convincing evidence in the record to support termination of the father's parental rights. Also, termination of the father's parental rights is in the child's best interests. We affirm the decision of the district court.

## I.    Background Facts & Proceedings

J.M. is the father and S.M. is the mother of B.M., born in 2006. The child is seriously mentally impaired and, at times, has been subject to involuntary mental-health commitment. The child lived with the father and step-mother.[1] On September 5, 2018, the father requested that the child be adjudicated a child in need of assistance (CINA). There were concerns that the child had threatened the father and expressed suicidal ideation. Also, B.M. had inappropriate touching or sexual contact with a younger child. The father stated he was unable to keep the child in the home and ensure her treatment needs were met. Additionally, he feared for the safety of his other children.

A CINA adjudication was filed on November 28, pursuant to Iowa Code section 232.2(6)(k) (2018), which applies when a parent "for good cause desires

---

[1] There was some confusion during the district court proceedings about the child's biological mother. The mother listed on the child's birth certificate had the same name as the father's wife, and social workers believed they were the same person. However, during the course of the proceedings, the State and the child learned the father's wife was not the child's biological mother, as he was previously married to another woman—who was the child's biological mother—and this woman had the same first name and last name as his current wife. The father had not informed the child that his current wife was not the child's mother. The whereabouts of the biological mother are unknown, and she has not appealed the termination of her parental rights.

to be relieved of the child's care and custody." The child was placed in a pediatric medical institute for children (PMIC). The father attended family therapy sessions.

In July and August 2019, the child had extended home visits. The Iowa Department of Human Services (DHS) wanted to transition the child back to her father's home, but the father was unwilling to allow B.M. to return to the home. He believed the child should be placed in a residential treatment facility.

In February 2020, the child was placed in foster care and received outpatient mental-health counseling and psychiatric services. A DHS report in July 2020 stated, "It is reported that [the child's] parents do not initiate telephone calls or video chats with her and [the child] takes the initiative to make the contact. It is reported that the parents are not supportive or enthusiastic towards [the child] during these contacts." The child stated she did not want to return home, "as she does not believe it to be a safe place to live." The father's last personal visit with the child was in July.

On August 21, the State filed a petition seeking termination of the parents' rights. On September 2, the child was hospitalized following several episodes of aggression and mental illness, which required intervention by the foster family, police officers, paramedics, and fire fighters. The child subsequently was placed in a PMIC because she required a higher level of care than that available in a foster home. She was transferred to a qualified residential treatment program in March 2021 because she had behavioral problems at the PMIC.

The termination hearing was held on May 3, 2021. The child testified that she wanted to have the father's rights terminated because "he is always in and out

of my life."[2] She stated she had not seen the father since July 4, 2020, a period of ten months. The child stated the father seldom called her, although she called him. The father agreed "it was easier to let [the child] call when she wanted to talk to us." The father did not believe the child was ready to return home.

A DHS social worker testified the father never completed a psychosocial evaluation. She stated the child could not be returned to the father's care because she needed to complete treatment at the qualified residential treatment program and there was not a strong parent-child relationship. The adult daughter of the former foster family expressed an interest in adopting the child.

The district court subsequently entered an order terminating the father's parental rights under section 232.116(1)(b), (e), and (f) (2020). The court found,

> [The child] is not able to return to her father's home, nor does she want to do so. Her father and stepmother do not want her to return to their home. [The child] has asked for her parents' rights to be terminated. They have not maintained meaningful and significant contact with [the child].

The court concluded that termination was in the child's best interests, stating the child "needs the permanency of knowing she no longer must attempt to interact with a set of parents who clearly don't want to be responsible for her or have any interaction." The father appeals the district court's decision.

## II. Standard of Review

---

[2] At the termination hearing, the child was represented by an attorney and separate guardian ad litem, who both advocated for termination of parental rights. Following conclusion of the hearing, the guardian ad litem filed a motion to withdraw. The body of the motion represents the motion was filed on behalf of the mother, which we believe was a scrivener's error. The motion was granted. A subsequent guardian ad litem was not appointed. On appeal, the child is represented by an attorney but not a guardian ad litem.

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III. Sufficiency of the Evidence

The father claims there is not sufficient evidence in the record to support termination of his parental rights. The father's rights were terminated pursuant to section 232.116(1)(b), (e), and (f).[3]

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435. We determine the father's parental rights may be terminated under section 232.116(1)(f).[4]

---

[3] The father's petition on appeal refers to section 232.116(1)(d), although that was not one of the grounds specifically cited by the district court. We recognize the father's briefing on that section may have occurred because of the district court's citation to paragraphs 2, 3, and 5 of the petition, when the grounds relied upon by the district court were paragraphs 2, 4, and 5 of the petition. Because we find clear and convincing evidence supports an alternate ground, we do not address section 232.116(1)(d) on appeal.

[4] Section 232.116(1)(f) may be applied when there is clear and convincing evidence in the record to support all of the following factors:
　　　　(1) The child is four years of age or older.
　　　　(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

The father challenges the district court's findings on the fourth factor—whether the child could be returned to his care at the time of the termination hearing. The father stated the child was not able to return home because of ongoing safety concerns related to her behavior. He agreed the child could not be returned to his care at the time of the termination hearing, but asserts this was due to the child's continued behavioral problems, rather than his actions. The father claims he has done what he could to support the child.

The child has been out of the home since 2018, a period of three-and-a-half years, without a trial home placement. The evidence shows that as time went on and the child remained out of the home, the father's interactions with the child decreased. In late 2019, when the child's doctors and therapists at a PMIC recommended the child transition home, the father refused, stating he believed the child needed additional services. The child was then placed in a foster home. The father and child both testified the father did not initiate telephone calls to the child; she had to take the initiative to make contact. At the termination hearing in May 2021, there had not been a face-to-face visit with the child since July 2020, a period of more than ten months.

We conclude the evidence shows the child cannot be safely returned to the father's custody. The child has a history of suicidal ideation and threats of self-

---

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

harm. The DHS social worker stated the child needed people around her to "support her in a positive way to help her live a productive life. She is always going to need to have people that can provide a secure, nurturing environment, not disruptive, and not focus on all of her faults." The father was not able to provide this supporting, nurturing environment.

We determine the district court properly terminated the father's parental rights under section 232.116(1)(f). We also find termination of the father's parental rights is in the child's best interests. We affirm the decision of the district court.

**AFFIRMED.**