# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0312
Filed April 15, 2026

———————————

**In the Interest of Z.P., Minor Child,**

**M.P., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Fayette County,
The Honorable Linnea M.N. Nicol, Judge.

———————————

**AFFIRMED**

———————————

Kristin R. Schiller Herman, Calmar, attorney for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney
General, attorneys for appellee State.

Kimberly S. Lange of the State Public Defender's Office, Waterloo,
attorney and guardian ad litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

These proceedings arise from the child-in-need-of-assistance (CINA) adjudication and subsequent termination-of-parental-rights (TPR) involving a mother and her son, Z.P., born August 2024. The mother argues termination is not in the child's bests interests and, alternatively, that an exception to termination should have been applied, that a guardianship should be established, and that the Iowa Department of Health and Human Services (HHS) failed to make reasonable efforts toward reunification. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Shortly after the child's birth, concerns arose regarding the mother's substance use. The record reflects that the mother self-reported intravenous methamphetamine use during pregnancy, including use shortly before the child's birth. As a result, the child came to the attention of HHS and was initially subject to a safety plan following his birth before being formally removed from the mother's custody by court order in September 2024. Following removal, the child was first placed with fictive kin and later transitioned to family foster care in April 2025, where he has remained. The child has never resided in the mother's custody.

In October 2024, the juvenile court adjudicated the child as in need of assistance based on concerns related primarily to the mother's substance use and associated safety risks. The child was placed in the custody of HHS, and a permanency plan required the mother to engage in substance-use and mental-health treatment, submit to drug testing, and participate in services designed to address the adjudicatory harms.

HHS provided a range of reunification services, including multiple substance-use evaluations, inpatient- and outpatient-treatment opportunities, random drug testing, family-centered services, and housing and transportation assistance. The mother participated in services and completed inpatient treatment on more than one occasion. However, the record reflects an ongoing pattern of relapse and an inability to maintain sustained sobriety throughout the pendency of the case. The case proceeded through a series of review and permanency hearings. At one point, the juvenile court granted the mother an additional six months to work toward reunification based on partial progress, including completion of treatment. Despite that extension, the mother's sobriety remained unstable. At the termination hearing, the mother acknowledged methamphetamine use as recently as the day before the hearing.

In September 2025, the State filed a petition to terminate parental rights, alleging statutory grounds for termination under section 232.116(1)(h) and (*l*) (2025). A contested termination hearing was held in November 2025. The proceedings addressed only the mother's parental rights, as the father—who was incarcerated in Arizona at the time—did not appear and his portion of the case continued. Testimony was presented from the HHS case manager, a family-centered services provider, and the mother. The court also took judicial notice of the underlying CINA file. The record reflects that, while the mother maintained a bond with the child and exercised visitation, the child had become integrated into his foster placement—where his daily needs were met and where he had developed strong parental attachments.

On February 2, 2026, the juvenile court entered its order terminating the mother's parental rights to the child. The court concluded that statutory grounds for termination had been proven and that termination was in the

child's best interests. The mother appeals, seeking reversal of the termination order and raising challenges related to the child's best interests, the applicability of permissive exceptions, and the denial of a guardianship alternative.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The defining elements of our best interests analysis are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## DISCUSSION

In general, when reviewing termination-of-parental-rights cases, we follow a three-step analysis, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception to termination applies and should be exercised to preclude termination. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); Iowa Code § 232.116(1)–(3). Yet, "[w]e do not address any steps not raised by a parent." *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). The mother does not contest that the statutory grounds for termination were satisfied. Rather, she challenges whether (1) termination is in the child's best interests, (2) the juvenile court should have applied a permissive exception to preclude termination based on the parent-child bond, (3) a guardianship should have been established in lieu of termination, and (4) the State failed to provide reasonable efforts for reunification. We address each in turn.

## I.      Best Interests.

To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The mother contends termination is not in the child's best interests because she maintains a meaningful bond with the child, has engaged in services, and should be afforded additional time to work toward reunification rather than permanently severing the parent-child relationship.

Even when considering the existence of a bond between the mother and the child, we conclude termination of her parental rights is in the child's best interests. *See In re B.S.*, No. 20-1463, 2021 WL 609093, at *1 (Iowa Ct. App. Feb. 17, 2021) ("Despite the close bond between the mother and the child, termination is in the child's best interests."). "The 'defining elements' of the best-interests determination are the child's safety and 'need for a permanent home.'" *Id.* (quoting *H.S.*, 805 N.W.2d at 748). The child has been out of the mother's custody for the majority of his life. By all accounts, he is happy and thriving with his foster family with whom he shares a "strong bond." Under these facts and circumstances, we conclude that termination of parental rights is in the child's best interests.

## II.      Permissive Exception

The mother maintains that because of the closeness of her relationship with the child, Iowa Code section 232.116(3)(c) should preclude termination of her parental rights. The exception applies when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code

§ 232.116(3)(c). Even assuming there is no question the mother and child are bonded, that bond is not enough to offset the child's current stability in contrast to the risks he is exposed to in the mother's care. Again, the defining elements of the best interests determination are the child's safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. The record fails to show that the termination would be detrimental to the child.

## III.    Guardianship

The mother next argues that guardianship would be preferrable to termination in order to allow her to remain in Z.P.'s life and preserve a caregiving relationship. As part of this argument, the mother is requesting the child be placed with an adult relative or fictive kin. Of note, the child had been placed with fictive kin in the beginning but was moved to foster care after mother "had a falling out" with the fictive kin.

"[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018); *see also In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). Our supreme court has emphasized that permanency—not continued supervision—is the governing principle, and courts should not deny termination in favor of a less permanent option when the child is otherwise entitled to stability and a permanent home. *See A.S.*, 906 N.W.2d at 477–78.

The record here supports the juvenile court's rejection of guardianship. Although the mother maintains a bond with the child, the evidence reflects she has been unable to achieve sustained sobriety and admitted methamphetamine use on the eve of the termination hearing. The child, by contrast, is integrated into a stable foster home where his needs are met and where he looks to his caregivers for daily support. The guardian ad litem recommended termination, and no evidence established that a

guardianship would better serve the child's long-term interests. Because termination here serves the child's long-term need for safety, stability, and permanency, the juvenile court properly declined to impose a guardianship.

## IV.    Reasonable Efforts

Generally, "the State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The mother contends the State failed to make such reasonable efforts toward reunification, asserting she was not provided with sufficient visitation and that the level of supervision of visits was unnecessarily restrictive. She maintains she preserved error by filing a written objection and asking for additional services during the permanency proceeding, in which she sought increased visitation and reduced supervision prior to the termination hearing. Assuming without deciding that such issue was preserved for our review, we disagree.

The record reflects HHS provided extensive reunification services throughout the case, including substance-use evaluations, multiple inpatient treatment opportunities, outpatient services, family-centered services, random drug testing, and assistance with housing and transportation. Here, despite those services, the mother was unable to achieve sustained sobriety. She relapsed repeatedly and admitted using methamphetamine as recently as the day before the termination hearing. The record also reflects inconsistent engagement with testing, including refusal of a sweat patch following a relapse. These facts undercut any claim that additional or less restrictive visitation would have remedied the adjudicatory concerns. Moreover, the services provided were tailored to address the core safety issue—ongoing substance use—which remained unresolved at the time of the hearing.

Because the mother's inability to safely parent persisted despite substantial provision of services, her reasonable-efforts challenge fails.

**AFFIRMED.**