# IN THE COURT OF APPEALS OF IOWA

No. 18-1828
Filed January 23, 2019

**IN THE INTEREST OF C.H. and D.H.,**
**Minor Children,**

**W.H., Father,**
        Appellant,

**C.H., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Winnebago County, Karen Kaufman

Salic, District Associate Judge.

        A mother and father separately appeal a permanency order involving their

two children. **AFFIRMED IN PART AND REVERSED IN PART ON BOTH**

**APPEALS.**

        Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for

appellant father.

        Jane M. Wright, Forest City, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Phillip Garland, Garner, guardian ad litem for C.H.

        Theodore J. Hovda, Garner, guardian ad litem for D.H.

        Considered by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A mother and father separately appeal a permanency order involving their two children, born in 2002 and 2004. They contend the district court (1) should not have denied their request to cancel a no-contact order preventing interaction with their children; (2) should have lifted a sequestration order which prohibited disclosure of the children's locations; and (3) should have concluded that the department of human services failed to make reasonable efforts toward reunification.

## I. *Background Facts and Proceedings*

The department became involved with the family after the older sibling was alleged to have sexually abused the younger child. The older child was transferred to a youth shelter and became the subject of a delinquency petition. The younger child initially remained with the parents. The district court ordered him removed from the home after the father obtained permission to take the older child from the shelter to a designated city within the State but instead took him to an unauthorized out-of-state location.

At the time of the younger child's removal, the State sought an order prohibiting contact between the parents and younger child or, in the alternative, supervised contact. The State cited the father's removal of the older child from the State. The district court issued a "Chapter 232 protective order" restraining the parents from having "any contact with" the younger child.

The mother moved to have the protective order modified but, in the interim, she and the father left the State and failed to maintain contact with the department or service providers. Eventually, the father was found in Tennessee and was

arrested on an outstanding warrant. Authorities returned him to Iowa, where he was jailed pending sentencing on an unrelated criminal matter. The mother returned to Iowa with the father. According to a department report, the children were "extremely confused and distraught about their parents' disappearance."

During the parents' five-month absence, the district court entered what it characterized as a "sequestration order" prohibiting disclosure of contact information regarding the children. After the mother returned, she sought to have the order lifted. She also reasserted her request to have the no-contact order canceled and asked the court to ensure the department made reasonable efforts toward reunification. The father filed similar motions.

The court modified the no-contact order to permit written communication between the mother and the younger child but required "no mention of Father in the letters." Following a permanency hearing, the court filed a permanency order addressing all the outstanding issues. The court declined to modify the no-contact order any further, denied the motion to lift the sequestration order, and concluded the department made reasonable reunification efforts. The parents appealed.

## II. No-Contact Order

The parents raise constitutional challenges to the no-contact order. Because constitutional issues were neither raised nor decided in the district court, we conclude error was not preserved for our review. *See M.D. v. K.A.*, ___ N.W.2d ___, ___, 2018 WL 6259488, at *7 (Iowa 2018) ("[W]e should not decide an important constitutional matter on appeal when the [parent] failed to preserve [the] argument for appeal." (Christensen, J., concurring in part and dissenting in part)). We will only address their non-constitutional challenge to the no-contact order.

The mother argues the restrictions on contact "severely limit[] Parents' ability to work towards reunification." The father makes a similar argument.

On our de novo review, we agree the no-contact order limited one of the primary reunification services—visitation with the children.[1] That said, the father took the older child out of the State without permission, failed to appear for a criminal proceeding, and evaded a warrant. Additionally, the record contains disputed and unresolved allegations that the father facilitated the sexual abuse of the younger child, allegations that warranted retaining the no-contact order against the father. We conclude the district court acted appropriately in leaving the no-contact order in place with respect to the father. *See* Iowa Code § 232.104(5) (2017) ("Any permanency order may provide restrictions upon the contact between the child and the child's parent or parents, consistent with the best interest of the child.").

As for the mother, she followed the father when he left the State and she remained incommunicado for several months. Although she reengaged in reunification services on her return to Iowa, her lengthy absence justified the court's decision to modify rather than lift the no-contact order. Commendably, the mother made sufficient progress that the department caseworker and a service provider testified they would not oppose further easing of the contact restrictions. We conclude this gradual approach, which was approved by the district court, served the dual purposes of protecting the child from further trauma and fostering reunification.

---

[1] The protective order listed the younger child as the protected party, but all concerned appear to concede the parents were also prohibited from interacting with the older child.

### III. Sequestration Order

The original sequestration order stated: "Pursuant to the State's motion, . . . the circumstances justify withholding information regarding the location of the children from the parents." Following the permanency hearing, the district court denied the motion to lift the sequestration order after noting the "risk of abduction" remained and, once the children's contact information was disclosed, it could not be "taken back." The court also addressed the department's request to have the parents sign releases allowing communication between their therapists and the children's therapist:

> While [the sequestration order] does require a lot of extra work on everyone's part, it should be clear to parents what they need to work on. Discussions between their therapists and the children's is appropriate to ensure that parents are working on areas that need to be address[ed] and to be able to make assessments about how to safely move forward with more contact. Obviously, if Father continues to deny his role in the abuse of the children and Mother continues to refuse to believe the abuse happened, whether they ever get to talk directly to the children's therapists is moot.

The parents again raise constitutional challenges to the sequestration order. Those challenges are not preserved for our review. *See K.A.*, ___ N.W.2d at ___, 2018 WL 6259488, at *7. The mother also argues "[t]he sequestration order makes it such that Parents have no ability to know where the children are located, what facility the children are living in, who the children are seeing for counseling, and no ability to provide information to or with the foster parents or placements of the children." The father makes a similar argument.

By its terms, the original sequestration order only prohibited the dissemination of information about the location of the children. However, as interpreted by the department and reaffirmed by the district court, the order also

precluded the dissemination of information generated by service providers who interacted with the children. On our de novo review, we are not persuaded that the State established the continued need for either aspect of the sequestration order.

First, with respect to the prohibition on disclosing the children's location given the ongoing risk of abduction, the no-contact order as to the father and the modified no-contact order as to the mother sufficed to protect the children. The department failed to prove an ongoing need for the additional sequestration order. Indeed, the department caseworker conceded the parents already knew where the younger child was located and had "not made any attempts to have contact with him." She also noted the father was on probation and his probation officer had authority to control his travel. In light of these concessions, the component of the sequestration order prohibiting disclosure of the children's location was essentially moot.

We turn to the portion of the order prohibiting the dissemination of any information generated by service providers, including therapists who counseled the children. The mother's attorney pointed out that, as it stood, "the parents [had] no idea what issues need to be addressed through the counselors," making it "very difficult" to work toward reunification. He also addressed the department's request to have the parents sign releases allowing their therapists to communicate with the children's therapist. He noted releases are a "two-way street" and the department wanted parental information yet, at the same time, wanted to "limit the ability for the parents to subpoena any information from those providers." Counsel summed up as follows:

> The attorneys for parents' have no ability to question or cross examine any of the children's providers that have been relied upon by the State to present their reasons for restricting contact or for parents or their attorneys to question the providers on what issues the children are having, with zero input of parent's in their treatment.

The father essentially seconded these arguments.

On our de novo review, we agree that the portion of the sequestration order that was construed to prohibit dissemination of provider information to the parents stymied parental efforts to work toward reunification. Without an understanding of the areas of concern, they were hard-pressed to address those concerns. Additionally, the department failed to articulate how parental knowledge of service-provider concerns would harm the children.

We conclude the sequestration order was essentially moot, overbroad if construed to preclude the dissemination of provider information to the parents, and duplicative of the no-contact order. Accordingly, we reverse the denial of the parents' motion to lift the sequestration order.

## IV.    *Reasonable Efforts*

The department has an obligation to make reasonable efforts toward reunification of parent and child. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The parents argue the department failed to fulfill this mandate. On our de novo review, we disagree.

The department furnished a host of services to address the circumstances that led to the children's removal. Although most were geared to the children, the parents were unavailable to engage in reunification services for a lengthy period of time. When they returned, they had to start from scratch. Under these circumstances, we conclude the department satisfied its reasonable-efforts

mandate. *See In re D.T.*, 435 N.W.2d 323, 330 (Iowa 1989) ("[T]he juvenile court's no contact order and the juvenile authorities' insistence on therapy for the family constituted reasonable efforts to prevent or eliminate the necessity for the removal of the two children from the home.").

## V. *Disposition*

We affirm all aspects of the permanency order except the portion denying the parents' motion to lift the sequestration order. We reverse that portion of the order.

**AFFIRMED IN PART AND REVERSED IN PART ON BOTH APPEALS.**