## IN THE COURT OF APPEALS OF IOWA

No. 19-0158
Filed April 3, 2019

**IN THE INTEREST OF A.M, D.M., Q.H., H.H., & D.H.,**
**Minor Children,**

**T.M., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Fremont County, Craig M. Dreismeier, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Vicki R. Danley, Sidney, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Ivan Miller of Billings & Mensen, Red Oak, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the termination of her parental rights. Five children are affected by the termination order: A.M., born May 2006; D.M., born January 2009; Q.H., born October 2014; H.H., born February 2016; D.H., born July 2017. The mother and Joseph, the father of the youngest three children, were involved in the process leading to the termination of their parental rights.[1] Parental rights were terminated by order dated January 11, 2019. The mother's rights to all the children were terminated under Iowa Code section 232.116(1)(e), (i), and (*l*) (2018); as to A.M., D.M., and Q.H., her rights were terminated pursuant to section 232.116(1)(f); and her rights to H.H. and D.H. were terminated pursuant to section 232.116(1)(h). On appeal, the mother challenges the existence of grounds to terminate her parental rights and argues she should be granted an additional six months to seek reunification.

### I. Background Facts and Proceedings.

Joseph's and the mother's relationship was physically violent, the violence having occurred in the presence of and sometimes involving the children. A five-year no-contact order did not dissuade the parents from having contact. The five children were removed from the mother's and Joseph's custody in August 2017 due to a domestic altercation between the parents that occurred in the presence of the children.[2] The mother was arrested and charged with child endangerment and domestic abuse assault; Joseph was arrested and charged with violating a

---

[1] The three fathers of these five children have not appealed the termination of their parental rights.

[2] The mother allegedly attempted to strangle Joseph in the children's presence.

no-contact order and child endangerment. The children were placed in protective custody.

The children were adjudicated children in need of assistance (CINA) on October 3, 2017, and remained in foster care. Both the mother and Joseph were again incarcerated after the adjudication hearing for continuing to violate the no-contact order. The children's out-of-home placements[3] continued following the juvenile court's dispositional order.

The mother and Joseph both have a history of substance abuse, including marijuana and methamphetamine use. Joseph did not participate in services provided by the department of human services (DHS). However, the mother obtained a substance-abuse evaluation and completed substance-abuse treatment by a January 2018 review hearing. She was also engaged in mental-health treatment, including anger-management and domestic-violence services. When not in jail, the mother regularly visited the children.[4]

A May 30, 2018 review hearing established that the mother was continuing to work with service providers, had participated in parenting classes, was employed, and had reported she was rejecting attempts by Joseph to contact her via social media. The mother provided negative drug screens through January and February and further drug screening was to be only as

---

[3] D.M. is in a placement separate from the other four children due to behavioral difficulties. On June 11, 2018, D.M was diagnosed with attention deficit/hyperactivity disorder, autism spectrum disorder, bipolar disorder, anxiety disorder, and disruptive impulse control and conduct disorder. He remained in the same placement at the time of termination and his foster father indicated he is willing to adopt D.M.

[4] The review order noted the mother was incarcerated for the third time since the CINA proceedings began due to violating the no-contact order. When a service provider visited Joseph in jail, he stated that the only way he would not be in jail is if the no-contact order between him and the mother was dropped.

requested. The mother progressed to semi-supervised visits with the children from Friday to Sunday evening. She found suitable housing and remained employed. By June 29, 2018, the children were placed with the mother for a trial home visit.

Unfortunately, soon after the children were returned to her care, the mother relapsed on methamphetamine and was involved in a new relationship with Colton, who has a violent criminal background. The mother did not share with service providers that she had relapsed or that she had a new partner living with her and the children.[5] At a drop-in visit on July 24, H.H. and Q.H. were observed outside unattended for several minutes. A child protective worker went into the home and saw an unknown male lying on the mother's bed. The worker thought the man exhibited physical indicators of methamphetamine use. The older children reported they were often unsupervised. The mother admitted she had been using methamphetamine with Colton while she was responsible for the care of the children. She also stated she was aware of Colton's prior domestic-violence and drug charges but maintained she trusted him because he told her about his background. On July 25, the mother admitted to her social worker that she had been using methamphetamine for the last "couple of weeks while caring for the children." She asserts her last use was July 22.

On July 26, 2018, a review modification order noted the trial home visit was not successful and the children were returned to foster care due to concerns about the mother's lack of supervision, relapse, and an inappropriate relationship with Colton. The court ordered drug screenings of the mother and children.

---

[5] It was reported that Colton threatened Q.H., saying he would slice the child's throat.

Hair-stat tests were conducted: D.M. tested positive for methamphetamine and amphetamine, the other children's hair tested negative. However, the children had been treated for head lice, which treatment may have affected the drug screen. The mother returned a sweat patch on July 30 that tested positive for methamphetamine. Her hair-stat test was negative.

On August 13, 2018, a worker met with Joseph in the county jail. Joseph indicated he was hopeful that following the termination of the five-year no-contact order between him and the mother, they and the children could be a family once again. On August 24, a caseworker found Joseph at the mother's home. Law enforcement was called, and both Joseph and the mother were incarcerated from August 24 to September 10 for violating the no-contact order.

Q.H.'s therapist noted that the child's behaviors "have been all over the place since being back in mom's care and then transitioning back to foster care and seeing his father." A.M.'s therapist noted that since returning to foster care, A.M. did not wish to resume visits with her mother. The therapist recommended allowing her that choice so A.M. could have "a small sense of control."

DHS recommended that the permanency goal be changed to termination of parental rights. A review and permanency hearing was held on September 26. On October 2, the juvenile court entered an order adopting the recommendation but noting "reunification efforts need to continue for all parties." The court informed the mother that not only did she need to maintain sobriety, she needed to demonstrate she could appropriately parent her children.

A November 23, 2018 family safety, risk, and permanency services progress report noted that on October 23, the mother appeared to be under the

influence and she was not appropriately dressed for the weather. The worker noted the mother stated her drug patch came back positive for methamphetamine "but assured this worker that she is not using." The reporter also noted the mother was consistently attending an Iowa Domestic Abuse Program (IDAP) equivalent class, had updated her substance-abuse evaluation, and was attending substance-abuse treatment weekly. The mother had housing, employment, and transportation.

On November 26, the IDAP counselor reported to the social worker that she had "seen great progression" in the mother, who was now able to "clearly see [Joseph's] manipulative behavior and his immaturity." She stated, "Only consistency over time will show a permanent change in [the mother's] behavior."

A termination hearing was held on November 28. The mother testified she had not used methamphetamine since her relapse in July. She questioned the accuracy of the sweat-patch tests.[6] Urinalysis drug screens on October 1, 12, 23, and 29 and November 6, 2018, were all negative. A hair-stat test collected on November 15 that the mother paid for was negative for all substances. The mother testified she intended to keep Joseph out of her life and she had been reporting his attempts to message her to law enforcement. She stated she wanted the children returned to her.

The court found the mother had been provided a variety of services to address domestic-abuse, substance-abuse, and supervisory issues. It noted the mother testified she is committed to keeping others out of her home but had not

---

[6] In addition to the July 30 sweat patch, the mother returned sweat patches that tested positive for methamphetamine on September 19, October 1, and October 10, 2018. August 6 and 14 tests were negative.

"demonstrated in actions her ability to apply what she has learned to keep her and the children safe." The court found the mother's "history of behaviors is a better predictor of the future than anything else she could testify to this court." Thus, the court concluded reunification at present was not possible.

On January 11, 2019, the court entered an order terminating the mother's parental rights. She appeals.

**II. Scope and Standard of Review.**

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the factual findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.* "Grounds for termination must be prove[d] by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child." *Id.*

**III. Discussion.**

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We find the State has proved termination is appropriate under section 232.116(1)(f) and (h).

Both subsections allow the court to terminate parental rights if a child of a specified age has been adjudicated CINA, has been out of the parent's custody for the requisite time period, and cannot be returned to the parent at present without risk of adjudicatory harm.[7] *See* Iowa Code § 232.116(1)(f), (h). The

---

[7] Iowa Code section 232.116(1)(f) is applicable to children four years of age or older who have been out of parental custody for at least twelve of the last eighteen months and any

children were adjudicated CINA and had been out of the mother's custody for fifteen months at the time of the termination hearing. The mother challenges only the element that the children cannot be returned to her at present. *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

We agree with and adopt the juvenile court's reasoning:

> [The mother] has gone through the motions in participating with what has been requested of her; however, has not learned and/or applied what was learned in order to protect herself or her children. [The mother]'s situation has changed since juvenile court became involved in the lives of this family. Initially, substance abuse was not an issue with her. However, it has been a known problem/concern since July 2018. [The mother] admitted to methamphetamine use in July 2018 and has tested positive for methamphetamine on several different occasions since then. Concerns about her caring for the children were noted prior to the trial home visit in June 2018. These concerns seemed somewhat inconsequential at the time but perhaps were hints of her deficiencies in this regard. During the trial home visit, her failure to supervise became readily apparent. As noted, her youngest children were observed unsupervised outside. Drugs were present in the home resulting in a positive drug test for [D.M.] . . . [The mother] allowed Colton . . . to reside in her home with her children even after she observed him threaten to harm [D.M.] She testified she was fearful of Colton which was part of the reason why she could not ask him to leave her home. [The mother] has a history of making very poor decisions with men which place her safety at risk along with the safety of her children. Her relationship with Joseph has been abusive and violent. Despite the court orders which prohibited contact in addition to the courses she has attended, she has continued to associate with him. Although she testified at the termination hearing that her relationship with Joseph is over, this court is doubtful of this occurring given the history these two have shared with one another. [The mother] and Joseph resided together as recently as September 2018. Her choices relating to relationships have placed her at risk of harm and her children as well.

---

trial period at home has been less than thirty days. Section 232.116(1)(h) is applicable to children three years of age or younger who have been out of parental custody for at least six of the last twelve months and any trial period at home has been less than thirty days.

We acknowledge the mother is attempting to address the substance-abuse and domestic-abuse concerns. However, despite more than a year of services, she has yet to establish a reliable pattern of sobriety and an environment free from domestic violence to allow the children to be safely placed in her care. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding "the changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (finding termination appropriate even though the mother did "display some improvement in some areas and was currently committed to sobriety"); *In re J.R.*, No. 17-0070, 2017 WL 1735914, at *2 (Iowa Ct. App. May 3, 2017) (finding termination appropriate because improvement "has not been sustained long enough to show she is able to maintain it").

The mother argues she should be allowed additional time to show she is capable of establishing such a pattern. Iowa Code section 232.104 allows the juvenile court to grant parents an additional six months when there are "specific factors, conditions, or expected behavioral changes" to cause the court to believe there will no longer be a need for removal at the end of the six months. Iowa Code § 232.104(2)(b). However, "our legislature has established a limited time frame for parents to demonstrate their ability to be parents." *In re J.E.*, 723 N.W.2d at 800. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495. On our de novo review, we conclude the district court appropriately declined to extend the time for reunification for an additional six months.

The mother asserts termination of her parental rights is not in the children's best interests and her bond with them should weigh against termination. Again, we agree with and adopt the trial court's findings.

> This court does not doubt there is a bond between the children and their mother. . . . Unfortunately, they can't continue to wait for . . . their mother . . . to comply with the terms of the case plan any longer. [A.M.] is already frustrated with her mother. She is tired of her mother making the wrong decisions which prevent them from returning to her care. An array of services have been in place to assist each parent with reunification efforts. Although [the mother] has participated in these services, she has failed to demonstrate she has learned the skills needed to safely parent her children. [Her] sobriety remains in doubt. Her ability to supervise/care for her children is questionable. Her inability to protect herself, let alone her children, from violent and abusive relationships, has continued to exist despite services in place.

While the mother expresses concern that the children will be separated, we note that D.M. and the others have not lived together for the major part of the last year and a half. Giving primary consideration to the children's safety, to the best placement for furthering the long-term nurturing and growth of the children and to the physical, mental and emotional condition and needs of the children, *see* Iowa Code § 232.116(2), we conclude termination should be granted so that the children can have permanency in their lives. And, as noted by the juvenile court, "Any bond which exists between each child and a parent is far outweighed by the children's need for permanency." We affirm the termination of the mother's parental rights.

**AFFIRMED.**