**IN THE COURT OF APPEALS OF IOWA**

No. 22-1410
Filed December 7, 2022

**IN THE INTEREST OF L.H.,**
**Minor Child,**

**A.E., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Calhoun County, Joseph McCarville,

District Associate Judge.


        A father appeals the termination of his parental rights to a child.

**AFFIRMED.**



        Kaitlyn C. DiMaria of DiMaria Law, PLLC, Grimes, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Mary M. Lauver, Lake City, attorney and guardian ad litem for minor child.



        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals the termination of his parental rights to a child born in 2019.[1] He contests the statutory grounds on which the district court relied to terminate his rights. He also contends the department of health and human services failed to make reasonable reunification efforts and termination was not in the child's best interests.

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2022). The father putatively challenges both grounds. We may affirm if we find clear and convincing evidence to support either. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We elect to focus on section 232.116(1)(f), which requires proof of several elements, including proof the child cannot be returned to parental custody.

The father does not explicitly argue the child could be returned to his custody. He contends the department failed to make reasonable reunification efforts. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."). The record indicates otherwise.

The department intervened in 2021 after learning of domestic abuse and methamphetamine use in the household. The mother voluntarily placed the child with a relative.

Meanwhile, the department established the father's paternity. He advised the agency that he began using drugs when he was eleven and had been actively

---

[1] The mother's parental rights were also terminated, but she did not appeal.

using them for the previous four or five years. The department offered him services, with which he engaged.

The district court adjudicated the child in need of assistance and initially ordered the parents to retain custody under the department's protective supervision. Shortly thereafter, the court formally removed the child from parental custody. At that time, the father requested more visits and a family team meeting. The court ordered the department to continue reasonable reunification efforts.

The department did just that, facilitating weekly supervised visits with the child, outpatient drug treatment, and drug testing. Despite these efforts, the father continued to use methamphetamine. At the termination hearing, well over a year after the department intervened, he admitted to recent use of the drug, stating, "I'm not going to say that I haven't relapsed or haven't used drugs in this time." He attempted to downplay the test result by focusing on the fact that it was positive for only one drug (methamphetamine) rather than two (methamphetamine and marijuana), as had been the case in the past.

By the time of the termination proceedings, the department case manager testified the father had "missed 14 out of 19 [drug] tests prior to April [2022]" and "five out of seven" drug tests from April 2022 through the termination proceedings approximately one and one-half to two months later. She noted that a patch placed on the father at the end of April 2022 and removed several days later was positive for methamphetamine. She testified to observing the father under the influence "at least three times, potentially more," as reflected by his "rapid speech" and "a lot of body movement," and she said she saw him in that condition after the most recent positive test.

In addition to affording the father drug treatment, drug testing, and regular supervised visits with the child, the department facilitated specialized services to move him closer to reunification. One such service was a series of parenting modules. According to the case manager, the father "met with the provider once and then said it was a waste of his time." Another was a "parenting program . . . geared more toward[] fathers," which the father "attended twice" before being unsuccessfully discharged. The department also facilitated "solution-focused meetings" with a service provider.

Despite the provision of these services, the case manager testified the father was "more focused on beating the system than . . . on parenting his son." She characterized him as "very defiant" and said his situation had "gotten worse" in the previous six months because he seemed "more emboldened to continue to defy the system and to prove that" the department did "him wrong . . . instead of focusing on the things he need[ed] to do to provide for his son." Those things included cessation of methamphetamine use. The father showed no inclination to do so despite the department's significant efforts to assist him.

On our de novo review, we conclude the department satisfied its obligation to make reasonable reunification efforts. We further conclude the State proved the child could not be returned to the father's custody as required by Iowa Code section 232.116(1)(f)(4).

Termination must also be in the child's best interests. Iowa Code § 232.116(2). There is no question that it was. The father could not safely parent the child. As noted, he appeared to be under the influence of methamphetamine during supervised visits, and the service provider stated he fell asleep during some

visits. There was also scant indication he would be able to handle the child's diagnosed medical condition that previously resulted in loss of consciousness and hospitalization. The case manager suggested the condition was trauma-induced. The father agreed but laid the blame at the department's doorstep, stating it was "strictly from the trauma of moving [the child]." Even if that was the case, those moves were necessitated by the father's methamphetamine use and his refusal to work toward sobriety.

The district court stated: "The child's safety [was] best ensured by termination" because the father could not "stay off drugs," was "uncooperative with substance abuse treatment, parenting classes, and most other [department] requirements," and was "not able to take custody of [the child]." We agree. We conclude termination of the father's parental rights was in the child's best interests.

**AFFIRMED.**