**IN THE COURT OF APPEALS OF IOWA**

No. 24-0552
Filed September 18, 2024

**IN THE INTEREST OF T.T.,**
**Minor Child,**

**N.A., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.

A father appeals the juvenile court's termination of his parental rights.
**AFFIRMED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., Badding, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

A father, N.A., appeals the juvenile court's termination of his parental rights with respect to his child, T.T., arguing the termination is not in the best interest of the child. We affirm the ruling.

## I. Background Facts and Proceedings

The child was born in September 2022. The child came to the juvenile court's attention in October 2022 when a child-in-need-of-assistance petition was filed in the Juvenile Court for Polk County, Iowa that alleged that T.T. was a child in need of assistance as defined in Iowa Code sections 232.96A(3)(b) and 232.96A(14) (2022). The State alleged in the petition that N.A., the biological father, was "uninvolved"; the mother married a different man in August 2021, who was the legal father of the child[1]; and the legal father's criminal history confirmed a history of violence that included assaulting his 14-year-old autistic son that he had with another woman.

Later that month, T.T.'s guardian ad litem applied for an ex-parte removal of the child from her parents' care. The juvenile court granted the guardian ad litem's request and entered a temporary removal order. T.T. has never since been in any of her parents' custody. That same month T.T. tested positive for a subcategory of methamphetamines and amphetamines, which indicate the newborn ingested meth. A removal hearing then followed, and the juvenile court confirmed the prior removal of T.T. from her parents' care after the juvenile court made specific findings of fact and found, "The Court believes the mother has

---

[1] The legal father does not contest the termination of his parental rights. The mother's parental rights were not terminated.

continued to struggle with using drugs and recovery." The temporary legal custody of T.T. was placed with the Iowa Department of Health and Human Services (HHS) for foster care. In December 2022, the juvenile court adjudicated T.T. to be a child in need of assistance pursuant to Iowa Code section 232.96A after the court made specific findings of fact and it found that placement outside the parental home was necessary based on the substance use and mental health. The juvenile court specifically found "pursuant to a post removal physical, a hair drug test was performed on [T.T.]. She tested positive for a subcategory of methamphetamines and amphetamines. The results indicate the newborn ingested meth. [N.A.] has tested positive for meth. He continues to dispute using meth."

In January 2023, a disposition hearing was held and the juvenile court confirmed T.T. to be a child in need of assistance as previously adjudicated and placement outside the parental home was necessary. Temporary legal custody of T.T. remained with HHS for purposes of foster care.

In March 2023, a permanency hearing was held and the court confirmed T.T. to be a child in need of assistance as previously adjudicated and placement outside the parental home was necessary based on substance use, mental health, instability, domestic violence, criminality, incarceration, and parenting concerns. The court allowed a six-month extension to work toward reunification. The court noted the parents needed to fully comply with services as outlined in the HHS Case Permanency Report.

In October 2023, a permanency review hearing was held. N.A. did not appear. HHS recommended the juvenile court identify the permanency goal as termination of parents' rights and adoption. The mother testified that she had

contact with N.A. in May 2023, and that they had previously used drugs together. The court directed the State to initiate termination proceedings.

The State filed the termination petition in November 2023, and the termination trial took place in December. An HHS worker testified that there were ongoing substance-use concerns with N.A., that he didn't take responsibility for his drug use, and that he has been repeatedly incarcerated during this case. She stated he had not consistently participated in visits with the child prior to his incarceration. The HHS report stated that N.A. had tested positive for methamphetamine in October 2022, denied using meth and refused treatment, and refused to take a subsequent test that December. He had been incarcerated for six months at the time of the December 2023 trial and had not seen T.T. since spring of 2023. The HHS worker stated N.A. has not been involved in this case The worker noted that he did not want his parental rights terminated. The HHS worker also stated that T.T. was living in the only home she had ever known.

The court ordered that T.T. remain in HHS custody for purposes of foster care placement but terminated N.A.'s parental rights pursuant to Iowa Code section 232.116(1) (2023), noting that N.A. "is unable to safely parent the child due to incarceration, substance abuse and lack of participation in services." N.A. now appeals.

## II. Standard of Review

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the child." *Id.*

**III. Discussion**

N.A argues that termination is not in the best interest of the child and was not necessary, citing that the mother's parental rights were not terminated. At trial, N.A. contested termination of his parental rights but did not argue that termination was against the child's best interest. But the juvenile court held that termination was in T.T.'s best interest so we will address N.A.'s best-interest argument on the merits.

Iowa Code section 232.116(1)(h) provided the grounds for termination of parental rights in this case, a finding the father does not appeal. Section 232.116(2) requires that such a termination be in the child's best interest.

To determine whether termination of parental rights is in the best interest of the child pursuant to Iowa Code section 232.116(2), we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "We also look to the child's long-range as well as immediate interests. . . . We look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted) (cleaned up).

N.A. argues that his parental rights should not be terminated because the mother's parental rights were not terminated. He does not provide extensive explanation as to why this ruling was not in the child's best interest. He simply states that maintaining his parental rights

would allow [T.T.] to maintain her legal relationship with [N.A.] affording her the opportunity to maintain contact with him and financial support from him; rather than being left fatherless. There was no evidence that [N.A.] could not maintain appropriate boundaries as necessary. With the child's permanency left in limbo, termination of the Father's rights at this time was not in her best interest.

But there is plentiful evidence against N.A.'s argument that he can or would maintain contact with T.T. or provide financial support, as he claims he would. At the time of termination, N.A. was incarcerated and serving time for domestic assault. This was not his first criminal conviction, and his criminal history includes prior instances of domestic assault and substance abuse, which all weigh heavily against T.T.'s best interest. N.A. has also not consistently visited or spent time with his daughter before his incarceration, which makes his claim that he would maintain future contact not credible. He was not consistently participating in visits and he has not pursued this case diligently. His claim that he may yet learn to parent in the future is not an adequate argument for maintaining his parental rights. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

And N.A. has failed to take responsibility for his past failures. He denied methamphetamine use after testing positive on a hair test and has refused to take a drug test when required. N.A.'s past drug use is concerning, but his failure to attend treatment or even recognize that past drug use casts doubt on his ability to safely parent his daughter. He has not shown a willingness to accept treatment. Many of these facts, such as his current incarceration, do not apply to the mother. The court's termination of N.A.'s parental rights while not terminating the mother's

rights is not in itself indicative of error. The juvenile court specifically stated that the mother's parental rights could be terminated in the future and outlined possible pathways for T.T.'s permanent placement if that should occur. We agree that those considerations provide T.T. the best chance of permanent placement and a stable and loving childhood. N.A.'s retention of his parental rights may serve his interest, but it does not serve T.T.'s best interest. We thus affirm the juvenile court.

**AFFIRMED.**