# IN THE COURT OF APPEALS OF IOWA

No. 24-1585
Filed January 9, 2025

**IN THE INTEREST OF B.T.,**
**Minor Child,**

**M.T., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, Richelle Mahaffey, Judge.

A father appeals the termination of his parental rights to his son. **AFFIRMED**.

Monte McCoy, Centerville, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, P.L.C., Centerville, for appellee mother.

Julie De Vries of De Vries Law Office, P.L.C, Centerville, attorney and guardian ad litem for minor child.

Jerod Applegate, representative for Osage Nation.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

An almost-three-year-old son and his family came to the attention of the Department of Health and Human Services ("HHS") with a report that his father was using methamphetamine in the son's bedroom and had assaulted the son's mother in the son's presence. The son was eventually removed from the father's custody and allowed to remain in the mother's custody under HHS's supervision. By the time of the termination hearing two years later, concerns had only grown about the father's long history of substance use, continued domestic violence, and unaddressed mental-health needs. The mother, HHS, the son's guardian ad litem, and the representative of the Osage Nation—of which both the father and son are members—all recommended termination of his parental rights. The juvenile court agreed. And the father appeals, arguing (1) the statutory ground for termination cannot apply since the son was not removed from his mother's custody; (2) the State failed to meet its extra requirement for termination under the Iowa Indian Child Welfare Act; and (3) termination is not in the son's best interest.

But the ground for termination, Iowa Code section 232.116(1)(f) (2024), does not require the son to be removed from the custody of both parents. Ample evidence in the record, including a qualified expert representing the Osage Nation, shows beyond a reasonable doubt that failing to terminate would likely result in serious emotional or physical damage to the son. And termination of the father's parental rights is in the son's best interest given the father's failure to obtain mental-health treatment or a psychosexual evaluation and his long and extensive history of substance use and domestic violence. The son needs and will receive a stable and positive home environment with his mother. We thus affirm.

## I.    Background Facts and Proceedings

A son—who is now five years old—came to the attention of HHS in May 2022 after the father was reported to be using methamphetamine and perpetrating domestic violence.[1]   HHS received a police report that alleged the father had sexually and physically abused the mother.  The mother also reported to HHS that the father was an "active meth user" and she had seen the father using methamphetamine in the son's bedroom.  The son was allowed to stay with the mother—living away from the father—under a safety plan.  The mother was also protected by a no-contact order against the father, which still remains in place.  And the family was offered voluntary HHS services.

The father has two older children from a different relationship.  Those children were also adjudicated in need of assistance, though as of the termination hearing those cases were closed and the children were placed in a legal guardianship with a relative of the father.

Eventually, HHS petitioned to adjudicate the son as a child in need of assistance.  The juvenile court adjudicated the son in January 2023.  And at a dispositional hearing in April 2023, the court ordered that the son remain out of the father's custody and in the sole custody of the mother under HHS's supervision.  At first, in January 2024, HHS recommended that a bridge order be considered to close the case.  But then, in the same month, the father was charged with willful injury causing bodily injury, willful injury causing serious injury, false imprisonment,

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2), *with id.* §§ 602.4301(2), 602.5110.

domestic abuse assault with intent to inflict serious injury, and domestic abuse assault display or use of a weapon.  In light of these criminal charges, the mother moved for a change of the permanency plan to termination of the father's parental rights instead of a bridge order.  The court agreed, and HHS ultimately petitioned for termination.

The father has a history of struggling with substance use.  In fall 2022, he completed outpatient substance-use treatment.  But he later admitted to HHS that he had used methamphetamine throughout the pendency of this entire case, except for two short periods of time.  Indeed, the father reported in a March 2024 substance-use evaluation that he "snorts up to an 8 ball of methamphetamine daily, and has done so for the past 14 years."  He did not enter a residential substance-use treatment program until March 2024.  And he completed the program that same month.  Since the treatment, the father had not had a positive drug test as of the termination hearing.

The father has also struggled with his mental health throughout this case, and he has not resolved these issues by fully using HHS services.  He has participated in mental-health assessments or individual therapy around three or four times.  The father's most recent mental-health evaluation was in August 2024, where at first there was no recommendation for treatment, but after HHS provided the evaluator with more information, therapy was recommended.

And the father has a serious history of domestic abuse against his romantic partners, as well as violence against his other children.  The father told an HHS worker that he has committed domestic violence against every romantic partner he has had except one.  He has admitted to physically disciplining his children,

including using a belt. The son has been reported to be present for some of these domestic-violence incidents. And the father has not completed the court ordered psychosexual assessment ordered in March 2023 to determine the risk level he poses to his children in light of his sexual-abuse charges.

A termination hearing was held over three days in July and September 2024. At the time of the September portion of the hearing, the father was incarcerated. During the hearing, a representative of the Osage Nation testified for the State as a qualified expert witness. The representative was a social work supervisor for the Osage Nation. He testified that the Osage Nation believed that the father's parental rights should be terminated. In his opinion, returning the son to the father's custody could "result in physical, emotional, or serious damage." And he confirmed that the son would not lose his tribal membership or any rights with termination of parental rights. The mother, HHS, and the guardian ad litem also all supported termination of the father's parental rights to the son.

After the hearing, the juvenile court terminated the father's parental rights. In a detailed opinion, the court found that the State proved by clear and convincing evidence that termination of the father's parental rights to the son is appropriate under Iowa Code section 232.116(1)(f) because the son was five, had been adjudicated in need of assistance, had been removed from the physical custody of the father for seventeen straight months, and could not be returned to the custody of the father at that time. The court also found under the Iowa Indian Child Welfare Act that continued custody of the son by the father "is likely to result in serious emotional or physical damage to the child."

And the court found that termination is in the son's best interests. The court reasoned that the father's past performance and history showed he could not "be a safe caretaker for [the son] now or in the foreseeable future." The court emphasized that the father "has done nothing to address the underlying roots of his violence toward women and his children, nor has he complied with the psychosexual evaluation." And it found that the strength of the bond between the father and the son "is outweighed by [the son's] need for permanency, and by [the father's] inability to safely parent by properly addressing the safety concerns that brought him to the attention of HHS over two years ago." The father now appeals.

## II.     Statutory Ground for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interest of the child. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving appropriate weight to the juvenile court's fact findings, especially when based on credibility determinations. *In re C.Z.*, 956 N.W.2d 113, 119–20 (Iowa 2021).

The court terminated the father's parental rights under paragraph "f" of Iowa Code section 232.116(1). That provision authorizes termination of rights to a child who is at least four years old and adjudicated in need of assistance if "[t]he child has been removed from the physical custody of the child's parents . . . for the last twelve consecutive months," and the child cannot "be returned to the custody of

the child's parents" at the time of the hearing.  Iowa Code § 232.116(1)(f); *see also In re. R.M.-V*, 13 N.W.3d 620, 624–25, (Iowa Ct. App. 2024).

The father argues that this ground cannot apply where, as here, the child remains in the custody of one parent because the statute uses the plural "parents" when requiring removal from and inability to return to the custody "of the child's *parents.*"[2]  Iowa Code § 232.116(1)(f) (emphasis added).  But the supreme court has rejected this interpretation of the word "parents" in other paragraphs of this statute because it would be contrary to the statutory directives that "the plural includes the singular" and that this statute be construed to serve "the children's best interests."  *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992) (cleaned up); *see also* Iowa Code §§ 4.1(17); 232.1.  The court noted its reasoning would also apply to the paragraph at issue here.  *See N.M.*, 491 N.W.2d at 155 n.5 (discussing paragraph "e," which has since become paragraph "f").  And our court has likewise followed this reasoning in rejecting the argument that a "child must be removed from the custody of both parents to terminate the parental rights of either parent" under paragraph "f."  *R.M.-V*, 13 N.W.3N.at 625.

The father's argument thus fails.  The son has been legally removed from the father's custody since April 2023, which was over a year at the time of hearing. It matters not under paragraph "f" that the son has remained in the custody of the mother.  *See id.*  As the father makes no other challenge to the statutory ground

---

[2] The State argues that the father did not preserve error on his challenge to the sufficiency of the evidence for this statutory ground by explicitly challenging it in the juvenile court.  But the father may challenge whether the State has met its burden to prove a ground for termination on appeal even if he did not do so in the juvenile court.  *See In re J.R.*, No. 24-0942, 2025 WL __, at *__ (Iowa Ct. App. Jan. 9, 2025) (en banc); *see also In re A.R.*, 316 N.W.2d 887, 888 (Iowa 1982).

for termination, we affirm the juvenile court's finding that termination is warranted under paragraph "f" of Iowa Code section 232.116(1).

### III. Heightened Requirement of the Iowa Indian Child Welfare Act

The father also challenges whether the State had met its heightened burden for termination under the Iowa Indian Child Welfare Act, Iowa Code chapter 232B. To terminate parental rights to an Indian child, like the father's son, the State must also prove "by evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that the continued custody of the child by the child's parent . . . is likely to result in serious emotional or physical damage to the child." Iowa Code § 232B.6(6)(a). And the father contends that any concerns about serious emotional or physical damage are contradicted by his continued rights to the two older half-siblings and could have been assuaged by "[c]ontinued supervised visitation with a professional provider." But on our de novo review, we agree with the juvenile court that there is evidence beyond a reasonable doubt that his continued custody "is likely to result in serious emotional or physical damage to" his son. *Id.*

The qualified expert witness—a representative of the Osage Nation—testified that returning the son to the father's custody could "result in physical, emotional, or serious damage." The expert noted there was a threat of physical damage because the father had not undergone a psychosexual assessment yet, and there could still be a threat of sexual abuse. And he testified that "children who observe domestic violence as normalized behavior—that becomes normal to them." The qualified expert said that the son, if he is continued to be exposed to the father and his relationships, could have a warped view of relationships and

"mirror" what he observes as he grows up. And these risks have already begun to materialize—the son's therapist explained the son's "play consistently exhibits the themes of violence, good versus evil, and aggression," and she has also observed him "holding stuffed animals down and punching them, punching furniture, throwing toys, and painting scenes of murder and blood."

To be sure, the father had made some progress with his mental-health evaluations, inpatient substance-use treatment, employment, and consistent supervised visits with the son. But the qualified expert and the juvenile court considered these factors in assessing the likelihood of damage to the son. And these recent steps "do not eliminate [his] past." *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Further, the different permanency outcomes for the father's other children do not dictate the same outcome here, particularly given that those children are older middle schoolers. *See In re K.F.*, No. 10-1389, 2010 WL 5050570, at *4–*7 (Iowa Ct. App. Dec. 8, 2010) (holding that evidence of a guardianship being chosen as a permanency option for a half-sibling did not demonstrate that termination was not in the best interest of the child). The juvenile court determined that "there is evidence beyond a reasonable doubt, including the testimony of the qualified expert witness," that the son will likely suffer serious emotional or physical damage by remaining in his father's custody. We agree.

## IV. Best Interest of the Child

Finally, the father challenges whether it is in the son's best interest to terminate his parental rights. The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the son's long-range and immediate interests. *See In re C.K.*, 558 N.W.2d 170,

172 (Iowa 1997). And we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re W.M.*, 957 N.W.2d 305, 313–14 (Iowa 2021).

The father reiterates many of the same points he made in contesting the likelihood of serious emotional or physical damage in arguing that termination is not in his son's best interest. And again, he suggests that a permanency option that permits him continued supervised visitation would better serve the son's interest. In support of this contention, he highlights that at an earlier stage of the case the parties supported closing the case with a bridge order giving custody to the mother but permitting him visitation.[3]

But the analysis above on the likelihood of damage to the son also weighs in favor of concluding termination serves the best interest of the son. Even considering the best interest of the son more broadly—including the potential interest in maintaining a relationship with the father—leads to the same conclusion. The father has a long and severe history of substance use and domestic violence. The father told an HHS worker that he has abused nearly every romantic partner that he has had. While the father has engaged in substance-use treatment, he has failed to address his violence towards women. Indeed, he has pending charges against him for domestic violence. And he has refused a psychosexual

---

[3] The State again argues that the father has not preserved error on a claim that a bridge order should have been entered because "[t]he father did not squarely make this argument at termination." We agree the only issue before us is whether *termination* is in the best interest and consider his argument about the earlier bridge-order proposal only in that limited context.

evaluation or a sex offender risk evaluation. *See In re K.B.*, No. 03-1414, 2003 WL 23220031, at *1–*2 (Iowa Ct. App. Nov. 26, 2003) (holding that the father's failure to address circumstances that led to his children's removal from his custody, including refusing to participate in a sexual offender evaluation, was evidence to support termination). The juvenile court concluded "[i]n looking at [the father's] past performance, the Court does not conclude he can be a safe caretaker for [the son] now or in the foreseeable future." We agree that the father has not put himself in a position to serve the son's best interest, and it is in the son's physical, mental, and emotional best interest to terminate the father's parental rights.

In contrast, the mother is a "loving, safe, stable, and nurturing parent" to the son. The mother has expressed her concerns about the father knowing her location. The father has repeatedly violated the no-contact order protecting her from abuse. The HHS worker testified that the mother moved to a new location so that the father would not know where she was living, as she has suffered from domestic violence at the hands of the father and "fears for her life." And the HHS worker testified that as long as the father "continues to have access to [the mother], [the son] won't have a permanent, stable, safe-feeling home." The mother has created a stable environment for the son and is able to protect him from the safety concerns the father poses. And this is what the son needs.

We do not doubt that the father and son love each other. But considering the son's safety and his physical, mental, and emotional best interest, we agree it is in the son's best interest to terminate the father's parental rights now.

**AFFIRMED**.

Greer, P.J., concurs; Buller, J., partially dissents.

**BULLER, Judge** (concurring in part and dissenting in part).

I concur in the judgment but dissent from footnote 2, in which the majority rejects the State's error-preservation argument. It seems undisputed that at trial the father did not make the same legal challenge to the statutory grounds for termination. Deciding this issue for the first time on appeal is an example of the majority opinion in *In re J.R.*, No. 24-0942, 2025 WL _____, at *_ (Iowa Ct. App. Jan. 9, 2025) (en banc) chipping away at our error-preservation rules. I dissent for the same reasons expressed in *J.R.*: this conclusion is inconsistent with many of our unpublished decisions and contrary to fundamental principles of error preservation and our role as a "court for the correction of errors at law." *See id.* at *_ (Buller, J., concurring in part and dissenting in part). I also reiterate my observation that if the General Assembly disagrees with our court making a policy judgment on whether error must be preserved in particular classes of cases (like criminal or juvenile), legislation can correct this error. *See id.*