**IN THE COURT OF APPEALS OF IOWA**

No. 24-1450
Filed January 9, 2025

**IN THE INTEREST OF A.R.,**
    **Minor Child,**

**J.R., Father,**
    Appellant,

**A.R.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

David Barajas of Macro Law, LLP, Des Moines, for appellant father.

Donna M. Schauer of Schauer Law Office, Adel, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Megil D. Patterson of Youth Law Center, Des Moines, attorney and guardian

ad litem for minor child.

Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**SCHUMACHER, Presiding Judge.**

Parents separately appeal the termination of their parental rights to A.R., born in 2020. Both claim the district court erred in concluding the child could not safely be returned to their custody and termination is not in the child's best interests. The mother further contends her bond with the child should preclude termination, the court should have granted her additional time to work toward reunification, and the Iowa Department of Health and Human Services (HHS) failed to make reasonable efforts toward reunification. Upon our review, we affirm on both appeals.

## I.      Background Facts and Proceedings

This family came to the attention of HHS in February 2023, upon concerns that the parents were using illegal substances while caring for the child. Both the father and the child tested positive for methamphetamine. The parents could not explain why the child had methamphetamine in her system. The mother maintained she last used illegal substances (THC) the year prior. The child was malnourished, underweight, and developmentally delayed. The child was removed from the parents' custody and adjudicated a child in need of assistance.

Family-preservation services were put in place. A permanency hearing took place in August. The father was participating in outpatient substance-use treatment, but he admitted drinking excessive amounts of alcohol and driving while intoxicated. The mother refused to participate in anger-management or parenting classes, and she did not allow the child to be evaluated for Early Access. The parents acknowledged a history of domestic violence between them. They fought and struggled to remain in control of their emotions while visiting the child. At a

court hearing, the mother escalated to the point that intervention by courthouse security was required. She also escalated during visits with the child and lashed out toward providers. The child, who was regularly exposed to the parents' volatility, exhibited concerning behaviors and was on her fourth placement since removal.

Over the guardian ad litem's resistance, the court granted the parents an extension to continue to work toward reunification, which would be one of several extensions the court allowed the parents. The court directed HHS to provide a SCRAM[1] bracelet to the father for alcohol testing, noting the father "needs to demonstrate a strong commitment to sober living." The court further stated it would evaluate evidence of the parents' progress by their interactions with providers and "ability/willingness to manage their mental health needs." The court ordered the parents to participate in separate visits with the child because they continued to argue with each other in the child's presence.

The father was discharged from substance-use treatment in November, and his SCRAM bracelet was removed. The next day, he went to a bar to drink. Later, the father refused to complete a requested drug screen because "he lost his ID." He tested positive for methamphetamine in March 2024. At a permanency hearing in May, the court observed the father "has significant, unresolved substance abuse issues." The court stated it "d[id] not believe his relapse was an isolated occurrence," noting it "did not find his demeanor or statements about the relapse to be credible." The court further noted the parents had "not accepted the reasons

---

[1] SCRAM stands for secure continuous remote alcohol monitor.

for removal" and their lack of progress was "not a reason to grant another extension." Meanwhile, the child's behavioral issues continued, and she was moved to yet another placement. The court directed the State to petition to terminate parental rights.

The termination hearing took place in June. The HHS caseworker opined the child could not be returned to the custody of either parent. The caseworker reported the father had tested positive for methamphetamine in each of the four months leading up to the termination hearing. In addition, the father refused to take responsibility for HHS involvement with his family, maintaining HHS had "tricked him into removal." The father had his "initial intake" for inpatient treatment "yesterday." He admitted he was "not entirely" "able to stop using methamphetamine" but reasoned he had used most recently because it was the only way for him to secure a spot in treatment.

Although the mother had made progress in therapy and other services, the caseworker opined her mental-health issues remained unresolved "to the point where she can't be a safe parent to the child" on her own. And like the father, the mother "minimize[d] and downplay[ed]" the reasons for the child's removal, such that the caseworker opined the mother lacked protective capacity for the child. In short, the parents had not shown "a change in behavior" or "accept[ance] there was a danger from the start."

On the bright side, the caseworker testified the child had "found a lot of stability" with her current placement. Further, the child's behavioral issues were improving through therapy tailored to her diagnosis of adjustment disorder. HHS

and the guardian ad litem opined termination of parental rights would be in the best interests of the child.

The court thereafter entered an order terminating both parents' rights pursuant to Iowa Code section 232.116(1)(h) (2024). The parents separately appeal.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.   Grounds for Termination

Both parents challenge the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. Iowa Code section 232.116(1)(h) requires proof of several elements conceded by the parents and proof the child could not be returned to their custody at the time of termination.

The father disputes this element, pointing to periods of this case he "has provided clean drug screens evidencing his sobriety and abstinence from illegal narcotics."[2]  But the father had a long and extensive history of substance-use

---

[2] The father also contends "the State failed to show that A.R. could not be placed back in the mother's care." This claim is unpersuasive. "[T]he [father] does not have standing to assert that argument on h[er] behalf in an effort to reverse the termination of h[is] parental rights." *In re P.R.K.*, No. 18-0218, 2018 WL 1633526, at *2 (Iowa Ct. App. Apr. 4, 2018) (citing *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating one parent cannot assert facts or legal positions pertaining to the other parent, as the court makes a separate adjudication as to each parent)).

issues. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "present time"—as used in section 232.116(1)(h)—to mean "at the time of the termination hearing"). Chronic substance-use issues render a parent unable to safely and effectively care for children. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

The mother also disputes this element, claiming "there is no evidence whatsoever, that the minor child cannot safely be returned to her home." Although the mother was participating in therapy, medication management, and other services, concerns remained about her mental health—concerns the mother failed to acknowledge for much of this case. The caseworker testified the mother's mental-health diagnoses "are issues that need more time to address than what we have had so far in this case to address so it's relatively new to start addressing them." *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a basis for terminating parental rights). The mother also stated she could move with the child to Utah to live with her brother.

The caseworker observed, the mother had stated she would

leave [the father] but she hasn't implemented it or tried to separate from him so I would be concerned as well as if she has a protective capacity to recognize when [the father] is using and when he is dangerous and if she has the capacity to protect [the child] from that.

Based on these and the other facts detailed above, we concur with the court's assessment that the child could not be returned to the custody of either parent at

the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

## IV.     Best Interests

The best-interests step in the termination analysis requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See* Iowa Code § 232.116(2). Both parents challenge the court's findings on this step. But the best-interests factors all favor termination. The parents' instability impacts their ability to provide for the child's safety, promote her nurturing and growth, and meet her needs. The parents have not progressed beyond fully supervised visits. They have not taken responsibility for the significant safety concerns precipitating the child's removal from their custody. The child has made great strides in her most recent placement. As the court observed, "the foster parents have been able to meet every medical need of this child" and "they have demonstrated a commitment to helping this child with her mental health issues by working with her play therapist." The child's therapist opined the child "is currently living in the best place possible to meet her current and future needs." Termination of parental rights is in the child's best interests.

## V.     Permissive Exception

The mother claims the court erred by not applying a permissive exception to termination. She contends the exception to termination provided by Iowa Code section 232.116(3)(c) should have been applied, because "[t]he record shows the child was bonded to her mother and cried when visits ended."

Section 232.116(3)(c) provides the court may decline to terminate a parent's parental rights if "[t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We acknowledge the child shares a bond with the mother. Yet on this record, the mother has not met her burden to establish that termination of her parental rights will be detrimental to the child.

## VI. Additional Time

The mother also claims the court should have granted "[a] six-month extension without termination," which she alleges "would have provided the necessary time to help mother and child get re-established, safely away from father." A grant of additional time to work toward reunification is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We cannot reach that conclusion here. As the guardian ad litem reported, the mother

> is participating in therapy, has completed SafeCare, taken anger management courses, and participated in marriage counseling. Although [her] progress appeared more promising [than the father], she is still in a relationship with [the father]. Because [the parents] remain in a relationship, they must be viewed as one pair when deciding on if return would be appropriate as a return to [the mother] would be a return to [the father]. [She] has made statements that she would leave [him] to be able to have [the child] return to her care. [The mother] has never made any attempts to separate herself from [the father].
>
> There is no doubt that these parents love their daughter, but they are just not in a position to have [the child] return to their care. The parents have not been able to demonstrate that they could safely parent [the child] in a sober home. The parents were already granted an extension which did not move us any closer to reunification. It is unfortunate for [the mother] that she has made progress in addressing her parenting concerns, but she is tied to her husband's lack of progress.

We agree. Given the mother's actions during the pendency of this case, we conclude additional time was unwarranted. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Given [the mother's] past performance we are not convinced additional time or services will change h[er].").

## VII. Reasonable Efforts

Finally, the mother contends HHS failed to make reasonable efforts toward reunification.[3] Our courts have recognized that the State must show reasonable efforts toward reunification "as a part of its ultimate proof" that grounds for termination exist. *See, e.g.*, *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). After lodging a complaint about reasonable efforts, the mother points to the fact that HHS "required her to have housing to have A.R. returned to her, while at the same time telling her she needed to leave her husband and their home." However, the mother's attorney acknowledged HHS "provided [the mother] with some housing information for herself if she would have to leave [the father]." As noted above, at all times since the child's removal, the mother chose to maintain her relationship with the father, despite obvious impediments that relationship caused to her possible reunification with the child. The mother's idea of moving to Utah was not raised until later in the case; the mother initially explored moving in with her mother. For over a year, the mother declined, refused, or was unable to take full advantage of services because of her own actions. We find HHS met its reasonable-efforts obligation.

---

[3] The mother's written motion for reasonable efforts raised the issue of visitation, so we question whether the mother preserved a reasonable-efforts issue concerning housing. But we choose to address the merits of the mother's reasonable-efforts claim on appeal.

Having addressed the issues raised on the parents' appeals, we affirm the court's decision to terminate their parental rights.

**AFFIRMED ON BOTH APPEALS.**