**IN THE COURT OF APPEALS OF IOWA**

No. 25-0484
Filed June 18, 2025

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**L.W., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Fremont County, Scott Strait, Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Whitney A. Estwick of Estwick Law, Omaha, Nebraska, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Katie Johnson of Katie Johnson Law, Council Bluffs, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., Langholz, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**DOYLE, Senior Judge.**

A mother appeals the termination of her parental rights to a child born in December 2021. She contests the evidence showing the grounds for termination and the finding that termination is in the child's best interests. She also challenges the reasonable efforts made by the State to return the child to her custody. After a de novo review of the record, *see In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022), we affirm.

**I. Background Facts and Proceedings.**

The child came to the attention of the Iowa Department of Health and Human Services (HHS) in April 2024 after deputies from the Fremont County Sheriff's Office investigated a report of squatters living in a home slated for demolition the next month. The house was boarded shut, but it appeared that someone kicked a door in to gain entry. The house also contained items that were not left by the homeowner, including a couch, mattress, and bedding. There were also items for a young child: a car seat, clothing, diapers, a pop-up fort, a walker, a rocking horse, teddy bears, dolls, and LEGO® bricks, among other toys.

A deputy detailed the abhorrent condition of the house in a nine-page, single-spaced narrative, and a video recorded by his body camera reflects the accuracy of his narrative. The house had no electricity or water, and it was littered with dirt, garbage, and waste. A five-gallon bucket used as a toilet was filled with human waste. Animal waste and human waste were also found on the floor and furnishings. Dead animals were reported in the house. A cardboard box held used toilet paper and soiled adult diapers. Other items inside the house included: cigarette butts, an empty package of marijuana, condoms, wire cutters, bottles

containing chemicals, used dishes and silverware, and food. These items were near or mixed in with the children's items.[1] Mold appeared to cover various surfaces, and a child's scribbles decorated the walls. The deputy observed, "The overall conditions of the house were horrific."

During their investigation, the deputies learned the house was used by two individuals who had occupied a neighboring home until it burned down. The mother and child lived with them before the fire. After the house burned down, the mother and child stayed with another neighbor when the mother wasn't visiting her boyfriend in Missouri. The mother denied living in the condemned home and claimed that none of the toys or other items found inside belonged to the child. But the neighbor she stayed with told a deputy that the mother went to the condemned house to "visit" the squatters. At first, the mother admitted entering the condemned house with the child only one time to "smoke a cigarette." Later, she told the deputy, "I'm not going to lie to you, we've been over here."

The deputy expressed concern about the mother's ability to care for the child. He observed the child's physical condition: "Her hands and feet were covered in black filth, her fingernails, as well as her toenails had black dirt

---

[1] Paragraph 73 of the deputy's narrative details one example:

> To the left of the couch, on the South wall, was a pile of trash that contained, soiled kid's diapers, mice droppings, dirty paper plates, a dirty towel with stains on it. In the pile of trash were also kid's toys, a dirty toilet brush, a fork, and other trash items. Next to the pile, on the filthy floor was a blue sippy cup with a green lid. There was also a kids walker toy and a green kids food tray on the top of it. Next to all of this, was a black trash bag that was full of trash.

The deputy believed the house's condition presented a high risk of "causing a sickness, or a disease, due to the amount of filth and grime that is present."

underneath, and needed trimmed." The child also had lice for which she was never treated.

The mother was arrested for child endangerment, and the HHS placed the child in foster care. After an investigation, the HHS found the child was at imminent risk of harm based on the mother's failure to provide proper supervision. It offered the mother two hours of supervised visits with the child each week.

In June, the juvenile court adjudicated the child to be in need of assistance under Iowa Code section 232.96A(7) and (14) (2024). It ordered the mother to complete a mental health evaluation and follow all recommendations, complete a psychological evaluation with an IQ component for a parenting assessment referral, and obtain and maintain safe and stable housing and verifiable income. But the mother was inconsistent in participating in services and visits. HHS workers and services providers could not contact the mother, who did not return their phone calls.

During a visit with the child in August, the mother demonstrated behavior that suggested she was under the influence of a mind-altering substance. Her HHS worker asked the mother to complete a drug screen, which the mother refused. Shortly after this, the mother moved to Missouri and has not had contact with the child since. She never obtained the evaluations ordered by the juvenile court or provided evidence of stable housing or employment.

In January 2025, the State petitioned to terminate the mother's parental rights under Iowa Code section 232.116(1)(b) and (h) (2025). After a hearing, the juvenile court entered an order terminating the mother's parental rights under both paragraphs.

**II. Discussion.**

**A. Grounds for termination.**

The mother challenges the sufficiency of the evidence showing the grounds for termination. We may affirm termination of the mother's parental rights to each child if the record supports termination on one ground found by the juvenile court. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

The court may terminate parental rights under Iowa Code section 232.116(1)(b) if "there is clear and convincing evidence that the child has been abandoned or deserted." Under chapter 232, a parent abandons a child by relinquishing or surrendering "the parental rights, duties, or privileges inherent in the parent-child relationship. Proof of abandonment must include both the intention to abandon and the acts by which the intention is evidenced." Iowa Code § 232.2(1). A parent deserts a child by relinquishing or surrendering "the parental rights, duties, or privileges inherent in the parent-child relationship" for more than six months. *Id.* § 232.2(15). Unlike abandonment, desertion does not require proof of intention "but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.*

Clear and convincing evidence shows the mother abandoned or deserted the child as required to terminate her parental rights under section 232.116(1)(b). After a visit in August 2024, the mother had no contact with the child and made no effort to have contact. Because more than six months passed between the mother's last contact with the child and termination, clear and convincing evidence shows she deserted the child. In addition, the mother's lack of participation in services throughout the CINA proceedings and her failure to complete any of the

requirements imposed by the juvenile court is evidence of her intent to surrender or relinquish the rights, duties, and privileges of the parent-child relationship as required to show abandonment of the child.

### B. The child's best interests.

The mother next contends that termination is not in the child's best interests. We analyze best interests under the framework described in section 232.116(2). *See In re A.H.B.*, 791 N.W.2d 687, 690-91 (Iowa 2010). That subsection requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Clear and convincing evidence shows that termination is in the child's best interests. At the start of the CINA case, the child's living situation was tenuous at best, and she was exposed to deplorable conditions that placed her at risk of harm even from brief exposure. Because of the mother's lack of involvement during the proceedings, the circumstances that led to the child's removal from the mother's custody remain unchanged ten months later. But the child's circumstances changed considerably while in the care of the foster parents. Due to their attentiveness to the child's needs, the child's physical, mental, and emotional health have greatly improved. The child is bonded to the foster parents and is thriving in their care. They are in the position to give the child the permanent and safe home that the mother has been unable to provide.

Children are not equipped with pause buttons. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that the court must not deprive children permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) (noting that if the plan to reconcile parent and child fails, "all extended time must be subtracted from an already shortened life for the children in a better home"). We are unwilling to deny the child permanency any longer.

**C. Reasonable efforts.**

Finally, the mother complains that the State failed to make reasonable efforts to return the child to her custody. *See* Iowa Code § 232.102(6) ("If the court orders the transfer of the custody of the child to the department or other agency for placement, the department or agency shall submit a case permanency plan to the court and shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child."). But reasonable efforts are not required for termination under section 232.116(1)(b). *See In re M.D.*, No. 19-1912, 2020 WL 567320, at *1 (Iowa Ct. App. Feb. 5, 2020) (collecting cases that hold section 232.116(1)(b) does not have a reasonable-efforts requirement); *cf. In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (discussing the language of section 232.116(1)(c), (d), (e), (g), and (k) that "implicates the reasonable effort requirement").

We affirm the termination of the mother's parental rights under Iowa Code section 232.116(1)(b).

**AFFIRMED.**